KIM TERSAVICH, Plaintiff-Appellant and Cross-Appellee, v. FIRST NATIONAL BANK & TRUST COMPANY OF ROCKFORD, as Trustee, Defendant-Appellee and Cross-Appellant.

Second District No. 2—89—0405

Opinion filed March 2, 1990.—Rehearing denied April 4, 1990.

David K.A. Shair and Craig A. Willette, both of Ritz, Shair & Anderson, Ltd., of Rockford, for appellant.

Kim M. Casey and Bradley T. Koch, both of Holmstrom & Green, P.C., of Rockford, for appellee.

JUSTICE DUNN delivered the opinion of the court:

The defendant, First National Bank & Trust Company of Rockford, is the trustee of a residuary testamentary trust created by Edward B. Holt (decedent). The will which created the trust lists as its beneficiaries the decedent's "children," but it does not name the plaintiff, Kim Tersavich, who claims to have been fathered out of wedlock by the decedent. The plaintiff brought an action for declaratory relief pursuant to section 2—701 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—701) seeking to construe the trust. The defendant moved for summary judgment (Ill. Rev. Stat. 1987, ch.

110, par. 2—1005) on the ground that the plaintiff did not file her action within the time specified by section 8 of the Illinois Parentage Act of 1984 (the Act) (Ill. Rev. Stat. 1987, ch. 40, par. 2508). The trial court granted the defendant's motion, and the plaintiff now appeals.

The facts here are not substantially in dispute. The decedent died in February 1985 leaving a will dated January 24, 1985. Article I of the will set forth a series of terms and their definitions as used in the will. Article I defined the terms "spouse," "children," "executor," "first successor executor," "trustee" and "guardian of the person" in this manner, and then these generic terms were used throughout the rest of the will. Thus, a rather general and nonspecific document was tailored to the decedent's wishes mainly through the definitions contained in Article I. Article I indicates that the word "children" in the will was to mean John E. Holt, Richard R. Holt, Douglas B. Holt, Melissa A. Holt, Nancy L. Holt and Cynthia R. Holt. The name of the plaintiff was not included in this definition of the decedent's "children." Article V of the will created a residuary trust that named as beneficiaries the decedent's spouse and children.

On March 25, 1985, the decedent's will was admitted to probate, and an order declaring heirship of the decedent was entered. The order named six individuals as the only heirs at law of the decedent, and the list of names did not include that of the plaintiff.

On September 11, 1986, the plaintiff filed a complaint for declaratory relief seeking to construe the trust. An amended complaint was filed on November 6. The amended complaint alleged that, although the plaintiff was the decedent's daughter, she was not included within the will's definition of "children." This, the plaintiff claimed, constituted a latent ambiguity in the trust. She asked the trial court to enter judgment in her favor by construing the testamentary trust so as to include her within the definition of the decedent's "children" who were beneficiaries under the trust.

Among the affirmative defenses the defendant advanced was that the plaintiff's claim was barred because it was not filed within the period specified by the statute of limitations contained in the Act, which requires that an action to determine parentage must be brought within two years of the date when the child reaches the age of majority. (Ill. Rev. Stat. 1987, ch. 40, par. 2508.) The age of majority in Illinois is 18. (Ill. Rev. Stat. 1987, ch. 110½, par. 11—1.) Because the plaintiff was born on April 7, 1960, her complaint would have to have been filed by April 7, 1980, if, in fact, the Act applies to this action. The trial court denied the plaintiff's motion to strike this affirmative defense.

The plaintiff filed a motion seeking reconsideration of the trial court's denial of her earlier motion to strike the affirmative defense based on the statute of limitations in the Act. The trial court denied the motion to reconsider, but it certified the question for interlocutory review pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308). In an order issued March 21, 1988, this court denied the plaintiff's application for leave to appeal.

On September 7, 1988, the defendant filed a motion for summary judgment pursuant to section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005). The motion was based, once again, on the plaintiff's failure to file her action within the time specified in the Act. In opposition to the motion for summary judgment, the plaintiff submitted her affidavit and the affidavits of her mother, Mary Katz Moule, and her uncle, Guy Spinello. The trial court granted the defendant's motion to strike the plaintiff's affidavit on the ground that she was an interested party under the Dead Man's Act (Ill. Rev. Stat. 1987, ch. 110, par. 8—201), but the court denied the motion to strike the affidavits of Moule and Spinello. Moule's affidavit recounted her relationship with the decedent, which began in 1959. She indicated that the decedent acknowledged that he was the plaintiff's father. Spinello's affidavit also stated that the decedent had acknowledged that he was the plaintiff's father.

After hearing arguments, the trial court granted the defendant's motion for summary judgment on March 28, 1989. The trial court found that there existed no issue of material fact and that the defendant was entitled to judgment as a matter of law. The basis of the trial court's decision was its determination that the statute of limitations contained in the Act barred the plaintiff's suit. The plaintiff appealed from the trial court's rulings on the defendant's motion for summary judgment, the denial of the plaintiff's motion to strike the affirmative defense based on the Act, and the granting of the defendant's motion to strike the plaintiff's affidavit. The defendant cross-appealed from the trial court's denial of its motion to strike the affidavits of Moule and Spinello.

We note initially that the plaintiff has withdrawn her appeal of the trial court's order striking her affidavit. Similarly, the defendant has withdrawn its cross-appeal. What remains at issue on appeal is whether the trial court properly granted summary judgment in favor of the defendant based on the plaintiff's failure to file her complaint within the time specified in the Act. The plaintiff argues that the Act does not apply to a declaratory action seeking construction of a trust. The plaintiff also argues that, if we find that the Act does apply to

this action, then she, as an illegitimate child, is faced with a barrier to such a suit that would not confront a similarly situated child born to married parents. The plaintiff claims that such a result would violate the equal protection guarantee of the fourteenth amendment (U.S. Const., amend. XIV).

■■ The public policy underlying the Act is that "Illinois recognizes the right of every child to the physical, mental, emotional and monetary support of his or her parents." (Ill. Rev. Stat. 1987, ch. 40, par. 2501.1.) It is difficult to see how the construction of a trust, several years after a child reaches the age of majority, is relevant to this public policy. Nevertheless, the Act declares that in "any civil action not brought under this Act, the provisions of this Act shall apply if parentage is at issue." (Ill. Rev. Stat. 1987, ch. 40, par. 2509.) The plaintiff's claim is based, at its heart, on the contention that she is the decedent's child. Without establishing this, her argument that the trust is ambiguous collapses.

The trial court relied on the Act's statute of limitations provision and, finding that the plaintiff's parentage had been placed at issue in the proceedings, held that the Act's statute of limitations worked to bar the plaintiff's suit. While it is understandable that the court reached such a result in interpreting the Act, we believe that closer analysis demonstrates that such an interpretation is untenable.

■■ Generally, an action to enforce an express trust is not barred by a mere lapse of time, at least where the trust beneficiary is not given reason to know of improper conduct on the part of the trustee. (*Lesser v. Village of Mundelein* (1975), 36 Ill. App. 3d 433, 437, 344 N.E.2d 29, 32.) Obviously, in the case of a testamentary trust, a "beneficiary" cannot possibly bring suit to construe or enforce the trust until it takes effect or, in other words, until the death of the settlor. Here, the plaintiff could not have brought suit to enforce the trust until February 1985, at the very earliest. If we were to hold that the Act's statute of limitations applies here, then the plaintiff's action would have to have been filed within two years of her 18th birthday, or April 7, 1980. Such a reading suggests that the plaintiff would never have had an opportunity to file the action to construe the trust because she could not have done so before the statute of limitations expired.

■■ ■ We reject this interpretation for four reasons. First, we feel the result reached is, without question, unjust and unreasonable. In construing statutes, it is presumed that the legislature did not intend its legislation to result in unjust and unreasonable consequences. (*Cruz v. Puerto Rican Society* (1987), 154 Ill. App. 3d 72, 78, 506

N.E.2d 667, 671.) It is difficult to impart to the legislature an intention to create the unjust result, which would occur if the Act were applied to the instant action.

■■ ■ Second, as noted above, the common law of trusts imposed no time limitation on the bringing of suits to construe a trust where the beneficiary does not know that the trustee has effectively repudiated the trust. To impose an arbitrary cutoff on this plaintiff's suit, despite the fact that the trust was not even created until after the statute of limitations had run, would be a stark departure from the common law. We are hesitant to reach such a result because, as a rule, statutes in derogation of the common law are to be strictly construed in favor of the person sought to be subjected to their operation. *Hettermann v. Weingart* (1983), 120 Ill. App. 3d 683, 690, 458 N.E.2d 616, 621.

■■ ■ Third, the purpose of the Act, which is to hold parents accountable for the support of their children, is in no way implicated where the "child" has since passed the age of majority and is not seeking to recover for unpaid support obligations. In construing a statute, the court should examine not only the statutory language, but its context and purpose as well. To ascertain the legislature's intent, the court will examine the entire statute and determine the objective the statute seeks to accomplish and the evils it is designed to remedy. (*Wills v. De Kalb Area Retirement Center* (1988), 175 Ill. App. 3d 833, 840, 530 N.E.2d 1066, 1070.) Here, none of the Act's goals would be served by application of the statute of limitations to a suit to construe a trust which itself was not created until well after the child reached the age of majority.

■■ ■ Fourth, if we hold that the Act bars this plaintiff's claim, we would impose a burden on the assertion of the rights of illegitimate children that does not affect similarly situated children born into wedlock. This raises serious concerns about whether such a scenario would run afoul of the constitutional guarantee of the equal protection of the laws. Though it may be constitutionally permissible to treat illegitimate children differently, they may not be denied a "reasonable opportunity" to assert their legal claims. (*Clark v. Jeter* (1988), 486 U.S. 456, 462-63, 100 L. Ed. 2d 465, 472-73, 108 S. Ct. 1910, 1914-15.) Here, the trial court's interpretation of the Act would effectively bar the claims of illegitimate children such as the plaintiff without providing a "reasonable opportunity" to assert them. Where possible, courts will interpret statutes so as to avoid an unconstitutional construction. *People v. Orth* (1988), 124 Ill. 2d 326, 334, 530 N.E.2d 210, 213.

The defendant, however, argues that the plaintiff could have appeared before the probate court to assert her claim of parentage when the probate court considered issuance of the order of heirship. This, the defendant contends, provided the plaintiff with a reasonable opportunity to press the issue of her parentage. The defendant correctly notes that the Act specifically declares that it "does not affect the time within which any rights under the Probate Act of 1975, as amended, may be asserted beyond the time provided by law relating to distribution and closing of decedent's estates or to the determination of heirship, or otherwise." (Ill. Rev. Stat. 1987, ch. 40, par. 2508(c).) The defendant suggests, however, that the plaintiff failed properly to avail herself of the reasonable opportunity to litigate her parentage within the probate proceedings.

There are two problems with the defendant's argument. First, even if the plaintiff had litigated her parentage in the probate court via the order of heirship, this would not conclusively establish her right to the relief she seeks in her suit to construe the trust. An order of heirship would only be *prima facie*, not conclusive, proof of parentage, and, ordinarily, heirship may also be litigated "in any place or court where the question may arise." (Ill. Rev. Stat. 1987, ch. 110½, par. 5—3(c).) Furthermore, even if the order of heirship were conclusive on the issue of the plaintiff's parentage, this would establish only one portion of her argument that she is entitled to benefits under the trust. The fact that the decedent was her father, if established, would merely serve as the predicate for her ultimate argument, namely, that the trust is ambiguous and in reality was intended to include her.

Second, even if the Act's exception pertaining to probate proceedings could apply to this action, what about similar actions brought to construe an *inter vivos* trust? An *inter vivos* trust does not relate in any manner to probate proceedings, so the Act's exception regarding probate proceedings would not save a suit to construe an *inter vivos* trust from the strictures of the Act's period of limitations. Once again, if the *inter vivos* trust is created more than two years after a would-be beneficiary reaches the age of majority, any suit in which parentage is at issue would be forever barred. The same equal protection problems would arise again. We believe it would be shortsighted to accept such an interpretation of the Act.

Therefore, we must search for an interpretation of the Act as it applies to an illegitimate child's suit to construe a trust which will serve the purpose of the Act without infringing on the rights of the illegitimate child.

Though the purpose of the Act is to insure that children receive the support due them from their parents, the statute of limitations contained therein evidences a further purpose. The limitation attempts to limit the spectre of "lurking problems with respect to proof of paternity" (*Gomez v. Perez* (1973), 409 U.S. 535, 538, 35 L. Ed. 2d 56, 60, 93 S. Ct. 872, 875); at the same time, however, it triggers a two-year statute of limitations only when a child reaches the age of majority so that such children have a reasonable opportunity to assert their rights. Thus, the legislature has struck a balance between the finality of parentage determinations and the rights of illegitimate children. The key to this balance is that the period of limitation does not run until the child can reasonably be expected to assert his or her rights.

Applying the same rationale to the case of an illegitimate child seeking to construe a trust, we believe that the Act's period of limitation should not run until the later of two triggering events occurs: (1) the child reaches the age of majority; or (2) the child knows, or should know, that a trustee has "repudiated, disavowed or acted in hostility to the trust" (see *Lesser v. Village of Mundelein* (1975), 36 Ill. App. 3d 433, 437, 344 N.E.2d 29, 32). The first prong reflects the statutory purpose to guard against stale paternity claims. The second prong, which is derived from firmly rooted principles of the law of trusts, insures that the statute does not unfairly penalize children who may not have knowledge of a possible cause of action until more than two years after they reach majority. Thus, the Act is harmonized with the common law of trusts. Such a construction also resolves the difficulties we outlined above because it avoids an interpretation of the statute that is patently unreasonable, possibly unconstitutional, and out of step with the underlying purpose of the Act.

Applying this standard to the instant case, the very earliest date at which the petitioner could have known that the trustee would act in hostility to her possible rights under the trust would have been in February 1985. The instant action was commenced in September 1986, after a period of less than two years. Therefore, the plaintiff's complaint for declaratory relief was timely filed, and the trial court erred by granting the defendant's motion for summary judgment.

The order of the circuit court is, therefore, reversed and the cause remanded for further proceedings.

Reversed and remanded.

WOODWARD and GEIGER, JJ., concur.