# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Ralda-Sanden v. Sanden*, 2013 IL App (1st) 121117

---

| | |
|---|---|
| Appellate Court Caption | COLLETT RALDA-SANDEN, Plaintiff-Appellant, v. ROBERT SANDEN, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-12-1117 |
| Filed | April 30, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of plaintiff's paternity complaint on the ground that it was barred by the two-year statute of limitations in section 8(a)(1) of the Illinois Parentage Act of 1984 was reversed and the cause was remanded, since plaintiff had no knowledge that she had a cause of action prior to the expiration of the limitations period and the circumstances warranted the application of the equitable tolling doctrine. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-D-80706; the Hon. Martha A. Mills, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Lisa Madigan, Attorney General (Michael A. Scodro, Solicitor General, and Diane M. Potts, Assistant Attorney General, of counsel), and Legal Assistance Foundation (Jennifer Payne and Miriam Hallbauer, of counsel), both of Chicago, for appellant.

No brief filed for appellee.

Panel

PRESIDING JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justice Simon specially concurred, with opinion.
Justice Connors dissented, with opinion.

**OPINION**

¶ 1        Plaintiff, Collett Ralda-Sanden (hereinafter is referred to as Collett), appeals the order of the circuit court dismissing her complaint to establish paternity against defendant, Robert Sanden (hereinafter is referred to as Robert), pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)). On appeal, Collett contends (1) the statute of limitations period contained in section 8(a)(1) of the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/8(a)(1) (West 2010)) should be equitably tolled where she had no knowledge of a cause of action prior to the expiration of the statute of limitations period, and where Robert fraudulently concealed the cause of action by intimidating Collett's mother; (2) Robert should be estopped from asserting the statute of limitations defense where his wrongful conduct precluded Collett from discovering his identity in a timely manner; and (3) refusal to toll the statute of limitations here would violate Collett's equal protection rights by depriving her of a reasonable opportunity to make her paternity claim. For the following reasons, we reverse and remand for further proceedings.

¶ 2                                    JURISDICTION

¶ 3        The trial court granted Robert's section 2-619 motion to dismiss on March 14, 2012. Collett filed this notice of appeal on April 12, 2012. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 4                                    BACKGROUND

¶ 5        On October 19, 2011, Collett filed her verified complaint to establish paternity pursuant to section 7(a) of the Parentage Act (750 ILCS 45/7(a) (West 2010)). In her complaint, Collett alleged that she was born in Chicago, Illinois, to Ana Ralda (hereinafter referred to as Ana or mother) on October 24, 1989. She had never met her biological father and

whenever she inquired about him, Ana always told her that her father had died in a car accident. In her uncontradicted affidavit, Collett stated that she had arguments with her mother about the identity of her father because Ana refused to talk about him. When she was a teenager, Collett applied for a state identification card (ID). She obtained her birth certificate in order to get the ID and she noticed the certificate listed her last name as "Ralda-Sanden" Until then, Collett had not known her father's last name.

¶ 6    After learning of her father's name, Collett periodically looked on the computer for information about her father but she did not find anything because "there are a lot of Robert's on the internet," and her mother continued to tell her that her father was long dead from a car accident. In July, 2011, Collett and Ana had a "bad argument" about her father and Ana then first told the truth to Collett. She told Collett that her father repeatedly raped Ana and that she ran away. Ana called the police but she dropped criminal charges against him. She also told Collett for the first time that her father "was probably still alive" and she gave his middle initial and birth date. She told Collett that he used to live in Evanston, Illinois. Based on that previously secreted information, Collett's Internet searches brought positive results. She discovered Robert was alive and living in Florida. Within three months she filed her paternity complaint.

¶ 7    In her uncontradicted affidavit, Ana stated that she is Collett's mother. She worked for Robert and his wife from 1988 to April of 1989 as a live-in nanny for their two-year-old daughter. Ana stated that about four months into her employment, Robert came into her bedroom one night while his wife was out of town, put a gun to her mouth and raped her. At the time, Ana was 4 feet 11 inches tall and weighed 95 pounds. Over the next six to seven months, Robert forced himself on Ana "about 30 times."

¶ 8    Ana began to feel sick in March of 1989. Robert took her to a clinic and they discovered that Ana was pregnant. Ana stated that she was a virgin when Robert raped her and she had not had sexual relations with anyone else at that time. Robert demanded that Ana terminate the pregnancy and became violent when she refused. When Robert attempted to rape Ana in April 1989, she ran away to a store where a clerk who spoke Spanish called police for her. Ana was taken to Evanston hospital and the police arrested Robert. The State's Attorney's office brought criminal charges against him and Ana left to live with a friend.

¶ 9    After his release from jail, Robert found Ana and threatened to kill her and her family in Guatemala. He forced Ana into his car and drove her to his attorney's office where he told her to sign some papers in which she recanted her statements concerning Robert's sexual assault against her. Ana was so intimidated by and fearful of Robert that she dropped the criminal charges against him.

¶ 10   In August of 1989, Robert called Ana and asked if she had seen a doctor. He made an appointment for her and drove her to the appointment. Ana gave birth to Collett on October 24, 1989. When she received the medical bill, Ana told the hospital to send it to Robert at his Evanston address. Robert called Ana in November 1989 and asked about her and the baby. Ana stated that this communication was the last she had with Robert. Robert never paid any support for Collett. In January of 1990, Ana applied for financial assistance and she gave the caseworker Robert's name and address.

¶ 11     Ana stated that she never told Collett the truth about Robert because she was afraid of what he would do if Collett tried to find him. She also did not want Collett to know that she was the product of a rape. Whenever Collett asked about her father, Ana told her only that his name was Robert and that he was dead. When Collett was a teenager, she saw her birth certificate and discovered that her father's name was "Robert." Collett would search the name on the computer, but she continued to believe that Robert was dead. Collett never found any information about her father on the computer.

¶ 12     In July of 2011, Ana finally told Collett the truth about her father. With the information, Collett discovered Robert alive and living in Florida. Ana stated that prior to that day, Collett did not know Robert was alive.

¶ 13     On October 19, 2011, Collett filed her petition to establish paternity. Robert filed a section 2-619(a)(5) motion to dismiss the petition, alleging that it was not filed within the time period specified in section 8(a)(1) of the Parentage Act. Collett responded that the two-year statute of limitations period in section 8(a)(1) should be equitably tolled until the time she discovered her father was actually alive. She further argued that Robert should be equitably estopped from asserting the statute of limitations defense due to his misconduct against Ana.

¶ 14     Although the trial court found the facts of the case, taken as true, were "reprehensible," it granted the motion to dismiss on March 14, 2012. It reasoned that the limitations period was sufficiently lengthy for a child to discover his or her parentage, and that "[t]o add an equitable tolling doctrine would open the floodgates to almost every claim of parentage made after a child reaches the age of 18." The trial court also declined to apply the equitable estoppel doctrine "when there is no appellate or other cited authority in this or any other jurisdiction supporting that extension." Collett filed this timely appeal.

¶ 15     We note that Robert did not file an appellee brief. However, this court may decide issues on appeal without the appellee brief and we choose to do so in this case. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 16                                        ANALYSIS

¶ 17     Collett argues that the trial court erred in granting Robert's motion to dismiss because the statute of limitations period in section 8(a)(1) should have been equitably tolled given her situation. A section 2-619 motion to dismiss admits the sufficiency of the claim but asserts affirmative matter that defeats the claim. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. Robert's assertion that Collett's petition is barred by the statute of limitations is a matter properly raised by a section 2-619 motion to dismiss. 735 ILCS 5/2-619(a)(5) (West 2010). The motion takes as true all well-pleaded facts and all reasonable inferences taken from those facts. *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 325 (1995). Furthermore, the court views all pleadings and supporting documents in the light most favorable to the nonmoving party. *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 504 (2006). We review the trial court's grant of a section 2-619 motion to dismiss *de novo*. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006).

¶ 18     Section 8(a)(1) of the Parentage Act requires that a parentage action brought by or on

behalf of a child "shall be barred if brought later than 2 years after the child reaches the age of majority." 750 ILCS 45/8(a)(1) (West 2010). Collett was born on October 24, 1989. Therefore, she reached the age of majority on October 24, 2007. According to section 8(a)(1), Collett had until October 24, 2009 to file her petition. Collett filed her petition on October 19, 2011, almost two years past the period outlined in the statute. She argues, however, that the statute of limitations period should be equitably tolled because she did not discover Robert was alive until July of 2011.

¶ 19     No Illinois case law directly addresses the application of equitable tolling to the statute of limitations period in the Parentage Act. However, case law exists on the application of the doctrine to state statutes in general. In *Clay v. Kuhl*, 189 Ill. 2d 603 (2000), our supreme court briefly addressed the issue. It noted the following as situations where equitable tolling may be appropriate: (1) if the defendant actively misled the plaintiff; (2) if the plaintiff was prevented from asserting his or her rights in some extraordinary way; or (3) if the plaintiff mistakenly asserted his or her rights in the wrong forum. *Id*. at 614.

¶ 20     For further guidance, we may look to cases where the statute at issue is a federal statute. Under federal law, equitable tolling may excuse failure to file within a statute of limitations period if the failure is caused by "disability, irremediable lack of information, or other circumstances beyond [the plaintiff's] control." (Internal quotation marks omitted.) *Williams v. Board of Review*, 241 Ill. 2d 352, 360 (2011). Equitable tolling does not require fault on the defendant's part. *Id*. at 361. Furthermore, the application of equitable tolling requires due diligence on the part of the claimant. *Id*. at 372. Due diligence is a "fact-specific inquiry, guided by references to the hypothetical reasonable person," or similarly situated person. (Internal quotation marks omitted.) *Id*. Where the limitations period is contained in a statute, "courts will consider the language establishing the statutory deadline, the underlying subject matter and purpose of the statute, and the practical effect of applying the doctrine." *Id*. at 365.

¶ 21     The application of equitable tolling to the statute of limitations contained in the Parentage Act is an issue of first impression. However, no Illinois case expressly prohibits the application of an equitable tolling of the statute of limitations, and our supreme court has noted situations where it may be appropriate. See *Clay*, 189 Ill. 2d at 614. Moreover, the public policy underlying the Parentage Act "recognize[s] the right of every child to the physical, mental, emotional, and monetary support of his or her parent." *Department of Public Aid ex rel. Evans v. Lively*, 246 Ill. App. 3d 216, 223 (1993). A paternity action filed under the Parentage Act "convert[s] a father's moral obligation to support his illegitimate children into a legal obligation." *Id*.

¶ 22     When the legislature discussed the statute of limitations period of up to 2 years after a child reaches 18 years of age, some lawmakers expressed concern about the effect of allowing a claim up to 20 years after the birth of an illegitimate child on a man who now is happily married with a family, a situation not present in this case. 83d Ill. Gen. Assem., Senate Proceedings, May 25, 1984, at 7. Other lawmakers, with concern for children such as Collett, responded that the purpose of the Act was to "think[ ] about the child who didn't even ask to come into the world. Someone has to protect that child and that's what this bill does ***." *Id*. at 10 (statements of Senator Geo-Karis). These lawmakers expressed the belief

that regardless of the mistakes made in their youth, it is the responsibility of men to support their children. *Id*. at 8. Therefore, in passing the legislation with section 8(a)(1), the legislators sought to emphasize a child's right to the "physical, mental, emotional, and monetary support of his or her parent." *Department of Public Aid*, 246 Ill. App. 3d at 223. Accordingly, we find that courts may apply the equitable tolling doctrine to allow a child to file a parentage claim past the section 8(a)(1) statute of limitations period.

¶ 23    In a section 2-619 motion to dismiss proceeding, the trial court may consider pleadings, affidavits, answers to interrogatories, depositions, and other proofs presented by the parties. *Tolan & Son, Inc. v. KLLM Architects, Inc.*, 308 Ill. App. 3d 18, 31 (1999). Collett and Ana filed affidavits supporting their opposition to the motion to dismiss. Robert did not file any counteraffidavits. "When supporting affidavits have not been challenged or contradicted by counter-affidavits or other appropriate means, the facts stated therein are deemed admitted. [Citations.]" *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995).

¶ 24    In her uncontroverted affidavit, Collett stated that throughout her childhood her mother told her that her father had died in a car accident. In her uncontroverted affidavit, Ana stated that she told Collett her father was dead because she was afraid of Robert, afraid that if Collett found him he would take her away from Ana. She also stated that she did not want Collett to know that she was the product of rape. As a teenager, Collett discovered her father's name on her birth certificate and she attempted to raise the issue with Ana. Ana maintained that Collett's father was dead. Collett periodically tried to find information about her father on the computer, but she found that "there are a lot of Roberts on the internet."

¶ 25    Due to Robert's past violent behavior toward Ana and his threats to kill her and her family if she did not do as he asked, Ana withheld information about Robert from Collett. One day in July of 2011, after a heated argument, Ana finally told Collett everything she knew about Robert and the circumstances of her birth. She also told her Robert's full name and middle initial, gave her his birth date and informed her that he used to live in Evanston. She told Collett that Robert was probably still alive. After learning the truth and armed with the new information, Collett made diligent inquiry, discovered Robert living in Florida, and filed her petition a mere three months later.

¶ 26    Equitable tolling is appropriate in situations where a plaintiff was prevented from asserting his or her rights in some extraordinary way. *Clay*, 189 Ill. 2d at 614. "Extraordinary barriers include legal disability, an irredeemable lack of information, or situations where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence. [Citations.]" *Thede v. Kapsas*, 386 Ill. App. 3d 396, 403 (2008). We hold that the equitable tolling doctrine should be applied here to allow Collett to file her petition, and the trial court erred in granting Robert's section 2-619 motion to dismiss.

¶ 27    Due to our disposition of this issue, we need not consider Collett's remaining contentions on appeal.

¶ 28    For the foregoing reasons, the judgment of the circuit court is reversed and the cause remanded for further proceedings.

¶ 29    Reversed and remanded.

¶ 30    JUSTICE SIMON, specially concurring.

¶ 31    I agree with the decision to apply the equitable tolling doctrine and reverse and remand this matter for a hearing on Collett's parentage action. Based on the facts of record, if any case existed that supported the application of the doctrine of equitable tolling, it would be this one. Collett's mother was repeatedly raped, assaulted, physically abused and even threatened at gunpoint by Robert. Her mother feared for her life and Collett's life if she disclosed Robert's identity, regularly refusing to say anything to Collett about her father other than he had been killed in a traffic accident. Finally, when Collett was 21 years old, her mother relented after a "bad argument" about the subject with Collett and disclosed information about Robert. Within a few months thereafter, Collett had located Robert and filed her paternity action. It is clear that Collett faced an "extraordinary barrier to assert[ ] her rights in a timely fashion." *Thede v. Kapsas*, 386 Ill. App. 3d 396, 403 (2008).

¶ 32    I write separately because I believe some treatment of the broader implications of the policies, statutes, and regulations involved in this case is necessary and helpful in concluding that application of the equitable tolling doctrine is appropriate. These thoughts may also serve to alleviate some of the concern of those who believe that application of the doctrine would open the "floodgates" to spurious parentage actions after the child reaches the age of majority or place other burdens on the judiciary. The policies served by application of the doctrine of equitable tolling in specific situations such as the instant matter deserve this treatment.

¶ 33    In considering the statute of limitations at issue here, the majority thoughtfully touches on the public policy underlying this issue. Especially relevant is the above-mentioned legislative history of the enactment of section 8(a)(1) of the Act and the consideration by members of the Illinois General Assembly of the public policy of the Parentage Act recognizing "the right of every child to the physical, mental, emotional and monetary support of his or her parents." 750 ILCS 45/1.1 (West 2010). The majority highlights, emphasizes and correctly applies the relevant case law to the factual record in the instant matter in holding that extraordinary barriers existed that prevented Collett from taking earlier action and the policy behind the Parentage Act that supports the tolling the statute of limitations.

¶ 34    The brief submitted by *amici curiae* Illinois Attorney General and Illinois Department of Healthcare and Family Services (Department) (*amicus* brief) provides a helpful backdrop and ample support for the reasoning that extends this analysis beyond the majority opinion. In addition to citing to federal and Illinois cases that recognize equitable tolling, the *amicus* brief explains in detail the importance of the comprehensive statutory framework the General Assembly has created to facilitate the effectuation of the essential policy goals of meeting the health and well-being needs of children while also providing safeguards to protect the State's interests. 305 ILCS 5/1-1 *et seq.* (West 2010). As addressed by the Attorney General and Department, the Department's rules and regulations provide further guidance and requirements to accomplish the goals of the relevant statutes and rules.

¶ 35    Under the Illinois Public Aid Code, the Department is charged with the administration of financial aid and social welfare services for families and children that lack the means of

a livelihood compatible with health and well-being. Any party that accepts financial aid from the Department assigns to the Department "any and all rights, title, and interest in any support obligation, including statutory interest thereon, up to the amount of the financial aid provided." 305 ILCS 5/10-1 (West 2010). This assigned right is considered a collectible obligation owed the State or local governmental unit by the person responsible and is "collectible under all applicable processes." *Id.*

¶ 36    Furthermore, to receive aid under the Public Aid Code, the family unit or parents must accept the "primary and continuing obligation of the family unit for self-support to the fullest extent permitted by the resources available to it." *Id.* The Department provides extensive detail within its rules and regulations as to how this obligation must be met. Of importance to this case are the general obligations to cooperate with the Department and to identify and locate responsible relatives, establish paternity, and obtain and enforce support obligations. 89 Ill. Adm. Code 160.30 (2005).

¶ 37    Where, as in this case, an action to determine the existence of a father and child relationship is necessary, it is required that the child, mother, guardian for the child, or the Department file the cause of action. 750 ILCS 45/7 (West 2010). The judgment entered on the parentage action shall include custody and support determinations. 750 ILCS 45/14 (West 2010). Child support awards are to be determined utilizing the guidelines and standards set by section 505(a) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/505(a) (West 2010)).

¶ 38    Pursuant to the Public Aid Code, any award granted from the efforts to establish parentage is subject to the assignment of those rights and the provisions provide the avenue for the Department to receive notice of any action concerning such matters and to pursue delinquent payments on its own. See 305 ILCS 5/10-10 (West 2010). In addition, for cases initiated by the Department under section 10-1 of the Public Aid Code, the court shall impose an additional fee equal to 10% of the amount of support past due that is to be transmitted to the Department. 305 ILCS 5/10-10.1 (West 2010).

¶ 39    This basic framework for these cases demonstrates that for a parentage action to be brought and succeed there must be clear evidence of the ongoing intent and action seeking to locate and collect from those obliged to pay. Furthermore, as the Department and Attorney General point out in their brief, where a party fails to cooperate, benefits are cut off unless good cause can be shown, such as where emotional or physical harm may result from cooperating. 89 Ill. Adm. Code 160.35 (1997). Accordingly, there are various incentives and requirements for a party to successfully bring its action at the earliest opportunity and not wait until after the limitations period of section 8(a)(1) has run. In addition, in these scenarios, the claims are essentially vetted through the involvement of the Department and the aid process under the statute and regulations.

¶ 40    Many of these incentives exist for situations where the family is not on public aid and seeks relief under the parentage action privately. While the statute clearly pronounces an important public policy and envisioned private pursuit of this remedy, there are no provisions allowing for recovery of costs or attorney fees or damages beyond the support payments due or past due. Accordingly, the General Assembly has not "embraced the concept of a 'private

attorney general' " to seek redress for this issue and therefore, without the possibility of recouping costs, there is a limitation on the incentive to file suit. *Eads v. Heritage Enterprises, Inc.*, 204 Ill. 2d 92, 98 (2003). There is much scholarly debate concerning the concept of the private attorney general doctrine, its application and benefits and costs to the public, and the need to create incentives for private representation beyond that provided by legal aid organizations and *pro bono* counsel. See Carl Cheng, Comment, *Important Rights and the Private Attorney General Doctrine*, 73 Calif. L. Rev. 1929 (1985); Pamela S. Karlan, *Disarming the Private Attorney General*, 2003 U. Ill. L. Rev. 183 (2003). Application of that doctrine is a matter for the legislature to consider and I do not render any opinion on that issue.

¶ 41    But it should be noted that there presently exist mechanisms that can ameliorate the misuse of equitable tolling. Under the Illinois Code of Civil Procedure and Illinois Supreme Court rules, complaints are routinely subject to motion practice and, as to those as particularly unique as this and others that may be patently frivolous, their flaws will be discerned and resolved expeditiously. Helpful in this regard are the sanctions of Supreme Court Rule 137 (eff. Jan. 4, 2013); Supreme Court Rule 224 (eff. May 30, 2008), which allows a plaintiff to identify the proper parties before filing an action; and Supreme Court Rule 219 (eff. July 1, 2002), which may be invoked for noncompliance by the person who fails to comply with the Rule 224 summons. Also helpful is the volunteer *pro bono* work of public interest lawyers and legal service agencies who have assumed and can be further encouraged to assume some of the burden of vetting actions and providing representation in paternity and enforcement actions.

¶ 42    The issues of past-due child support and abuse of family members frustrate the Public Aid Code and Parentage Act. Because the framework that has been established benefits public policy in general and also provides direct benefits to children in need as well as the State, the subject matter and purpose of the statutes are served by applying the equitable tolling doctrine. With the caveat that the practical effect of applying the doctrine of equitable tolling is limited in scope as set forth in the majority opinion and strictures of cases cited in this panel's opinion, I join in the majority's order in reversing the trial court's dismissal of this case and its remand to the trial court for further proceedings.


¶ 43    JUSTICE CONNORS, dissenting.

¶ 44    I respectfully disagree with my colleagues. Although the facts of this case are indeed "reprehensible," we are bound to apply the existing legal framework and precedents that govern the relevant issues, no matter the ultimate outcome. In my judgment, the parties' burdens based on the procedural posture of this case are determinative and force the conclusion that Collett's claim is time barred.

¶ 45    Collett appeals from the dismissal of her claim pursuant to section 2-619(a)(5) of the Code of Civil Procedure (Code), which permits involuntary dismissal of an action that was "not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2010). Generally, in a section 2-619 motion to dismiss, "all well-pleaded facts and reasonable inferences [contained in the complaint] are accepted as true for the purpose of the motion,"

but conclusions of law are not. *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 85 (1995).

¶ 46 Under section 2-619(a)(5) specifically, when the defendant asserts that the action is brought outside of the limitations period, the plaintiff must provide sufficient facts to avoid application of the statute of limitations as a bar to her claim. *Hermitage Corp.*, 166 Ill. 2d at 84. That is, the defendant bears the initial burden of going forward on his motion, but the burden then shifts to the plaintiff, who must establish the ground asserted is either " 'unfounded or requires the resolution of an essential element of material fact before it is proven.' " *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997) (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993)). The plaintiff may satisfy her burden by presenting affidavits in support of her claim. *Epstein*, 178 Ill. 2d at 383 (citing 735 ILCS 5/2-619(c) (West 1992)). " 'If, after considering the pleadings and affidavits, the trial judge finds that the plaintiff has failed to carry the shifted burden going forward, the motion may be granted and the cause of action dismissed.' " *Epstein*, 178 Ill. 2d at 383 (quoting *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116). Because this type of motion requires a determination as to whether a genuine issue of material fact exists or whether dismissal is appropriate as a matter of law, it is subject to *de novo* review. *Epstein*, 178 Ill. 2d at 383.

¶ 47 Here, Robert satisfied his initial burden of establishing that Collett's complaint was barred by the statute of limitations. He adequately asserted that section 7 of the Parentage Act permits a child to bring an action to determine the existence of a father and child relationship, whether she brings it in her own name after attaining the age of majority, or whether it is brought on her behalf by her general guardian or guardian *ad litem*. 750 ILCS 45/7(a), (c) (West 2010); *Klak v. Skellion*, 317 Ill. App. 3d 1092, 1095 (2000). He asserted that a child's claim is subject to the limitations period set forth in section 8(a)(1) of the Parentage Act. 750 ILCS 45/8(a)(1) (West 2010); *Klak*, 317 Ill. App. 3d at 1096. Section 8(a)(1) provides that "[a]n action brought by or on behalf of a child *** shall be barred if brought later than 2 years after the child reaches the age of majority." 750 ILCS 45/8(a)(1) (West 2010). Robert also asserted that according to the complaint, Collett's birthday is October 24, 1989, and she reached the age of majority on October 24, 2007, her eighteenth birthday. He argued that under section 8(a)(1), Collett's complaint must have been filed by October 23, 2009. However, it was not filed until October 19, 2011, nearly two years after the time allowed by section 8(a)(1). Thus, he argued, it was untimely and must be dismissed.

¶ 48 In response, Collett argued that the statute of limitations should be equitably tolled because, although she had known that her father's name was "Robert Sanden" since she was a teenager, her mother, Ana Ralda (Ana), did not tell her Robert's middle initial or date of birth until July of 2011. Collett also argued that she diligently filed her complaint within three months of being told this additional identifying information.

¶ 49 A statute of limitations "governs the time within which lawsuits may be commenced after a cause of action has accrued." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 61 (2006). The equitable tolling doctrine may be applied to suspend the running of a statutory limitations period in certain limited circumstances. *Block v. Pepper Construction Co.*, 304 Ill. App. 3d 809, 817 (1999). It is an exception to the general rule that a statute of limitations is not tolled. *Block*,

-10-

304 Ill. App. 3d at 816. This is so because, as our supreme court has long recognized, a statute of limitations represents the careful balance between an individual's right to seek redress for his injuries against "society's recognition that predictability and finality are desirable, indeed indispensable, elements of the orderly administration of justice." *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257 (2001). Thus, the principles of equitable tolling must be applied with caution. *Block*, 304 Ill. App. 3d at 817.

¶ 50     The majority correctly notes that the specific question of whether the equitable tolling doctrine applies to the limitations period contained in the Parentage Act has not yet been addressed by any Illinois court. See *supra* ¶ 21. Contrary to the majority's assertion, however, the doctrine's applicability has little, if anything, to do with effectuating the underlying public policy of the statute at issue and its reliance on *Williams v. Board of Review*, 241 Ill. 2d 352 (2011), is misplaced. See *supra* ¶¶ 20-22. Although *Williams* involved the equitable tolling doctrine, the court made clear that it was analyzing whether the *federal* equitable tolling doctrine could be applied to the *federal* Trade Act of 1974 in a case before the Board of Review of the Illinois Department of Employment Security. *Williams*, 241 Ill. 2d at 354. Thus, the court was "bound" to apply the well-established federal equitable tolling doctrine and follow the decisions of the United States Supreme Court and the lower federal courts. *Williams*, 241 Ill. 2d at 354.

¶ 51     It is clear that federal courts recognize that there are important differences in the way that state and federal tolling doctrines are applied based largely on matters of legislative policy. See *Shropshear v. Corporation Counsel of the City of Chicago*, 275 F.3d 593, 595-97 (7th Cir. 2001) (discussing the "reciprocal relation between the length of the limitations period and the grounds for tolling (extending) it"). Specifically, the Seventh Circuit Court of Appeals has noted that "[t]he tolling rule is a 'part of the legislative balancing of the conflicting interests of enforcement versus staleness of claims embodied in statutes of limitations.' [Citation.]" *Shropshear*, 275 F.3d at 596-97. Consequently, different legislative prerogatives may result in "the federal doctrine [being] broader than the state one" under certain circumstances. *Shropshear*, 275 F.3d at 596. Thus, the state and federal doctrines are not interchangeable, and without further guidance from the supreme court, there is no justification for grafting the substantive law of *Williams* onto the facts of this case.

¶ 52     Under existing Illinois law, the equitable tolling doctrine may be applied to suspend the running of some statutory limitations periods and not others depending on the nature of the limitations period itself. *Van Milligen v. Department of Employment Security*, 373 Ill. App. 3d 532, 542 (2007). That is, the doctrine applies only to statutes of limitations that are procedural in nature and not to "statute[s] that both confer[ ] jurisdiction on a court and fix[ ] a time within which such jurisdiction may be exercised." *Van Milligen*, 373 Ill. App. 3d at 542. The key distinction is whether, as in the latter case, "the right of action created by a particular act is a substantive right unknown at common law and one that also makes the time for filing the charge an inherent element of the right created." *Gonzalez v. Human Rights Comm'n*, 179 Ill. App. 3d 362, 367-68 (1989); *Van Milligen*, 373 Ill. App. 3d at 542. Under those circumstances, the limitations period is considered jurisdictional because the time for bringing the action is an inherent part of the right of action created; thus, it is not subject to tolling. *Van Milligen*, 373 Ill. App. 3d at 542; see also *Weatherly v. Human Rights Comm'n*,

338 Ill. App. 3d 433, 439 (2003).

¶ 53        On the other hand, a statute of limitations that "merely fix[es] the time in which the remedy for a wrong may be sought, and do[es] not alter substantive rights" is procedural in nature and is subject to tolling. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 351 (2002); *Van Milligen*, 373 Ill. App. 3d at 542. The supreme court has explicitly held that the limitations period contained in the Act is procedural and not jurisdictional. *Dornfeld v. Julian*, 104 Ill. 2d 261, 267 (1984). Therefore, I do not disagree with the majority's conclusion that the equitable tolling doctrine may be applied to the Parentage Act in general and would have rejected that finding by the trial court. See *supra* ¶¶ 14, 22. Rather, I disagree that the doctrine should be applied in this case.

¶ 54        As the law now stands in Illinois, the equitable tolling doctrine may be applied to suspend the running of a statute of limitations where the defendant has "actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or if the plaintiff has mistakenly asserted his or her rights in the wrong forum." *Clay v. Kuhl*, 189 Ill. 2d 603, 614 (2000). The Third and Fourth Appellate Districts have refined that rule, borrowing heavily from the language of the federal doctrine, to apply equitable tolling where "the plaintiff cannot reasonably be expected to sue in time because of disability, irremediable lack of information, or other circumstances beyond his control," as when "a plaintiff cannot discover his injurer's identity within the statutory period despite the exercise of reasonable diligence." *Griffin v. Willoughby*, 369 Ill. App. 3d 405, 416 (2006) (citing *Fidelity National Title Insurance Co. v. Howard Savings Bank*, 436 F.3d 836, 839 (7th Cir. 2006)); *Thede v. Kapsas*, 386 Ill. App. 3d 396, 403 (2008). See also *Clay*, 189 Ill. 2d at 614 (citing *Ciers v. O.L. Schmidt Barge Lines, Inc.*, 285 Ill. App. 3d 1046, 1052 (1996) (applying federal law to determine whether the equitable tolling doctrine applied to maritime torts governed by federal statutes of limitations)).

¶ 55        Ordinarily, whether the doctrine applies in a particular case is heavily dependent on the facts of the case. See *Neaterour v. Holt*, 188 Ill. App. 3d 741, 746 (1989) (citing *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981)); see also 3 Richard A. Michael, Illinois Practice § 8:3, at 236 (1989). However, in this case, Collett submitted affidavits in support of her claim for tolling and Robert failed to produce any counteraffidavits to dispute the facts contained in those affidavits. Thus, the "well-alleged facts" asserted by Collett must be taken as true for purposes of the motion and, because they are undisputed, a reviewing court may decide as a matter of law whether the doctrine applies in this case. *Steiner Electric Co. v. NuLine Technologies, Inc.*, 364 Ill. App. 3d 876, 882 (2006).

¶ 56        Nevertheless, even taking the facts in Collett's affidavits as true, she has not sustained her burden of establishing that the statute of limitations should be equitably tolled in this case. Although the tolling doctrine may be applied where the plaintiff cannot discover the identity of the defendant during the statutory period, it requires that the plaintiff have exercised reasonable diligence during that statutory limitation period in attempting to discover the defendant's identity. See *Griffin*, 369 Ill. App. 3d at 416. In my judgment, Collett has not demonstrated such diligence.

¶ 57        In her affidavit, she stated that she had known Robert's first and last names since she was

"in her teens." She also stated the following in her affidavit: "Over the years, I have periodically gotten onto [*sic*] the computer and tried to find my father. I have known his first and last name[s] since I was a teenager, but there are a lot of 'Robert Sandens' on the internet." By her own account, Collett knew Robert's first and last names for at least one year and as many as seven years within the applicable limitations period, which is adequate information with which to try locating Robert. Despite possessing this information, Collett admitted that she only conducted periodic Internet searches "over the years." As sympathetic as Collett's situation is, I am not persuaded that a simple name search on the Internet constitutes reasonable diligence in discovering Robert's identity sufficient to toll the statute of limitations.

¶ 58      Additionally, I am not persuaded that her lack of information about Robert's identity was "irremediable." Despite Collett's assertion, Ana was not the only person or resource that Collett could have relied on to learn Robert's identity. Collett could have sought the appointment of a guardian *ad litem* (750 ILCS 45/7(c) (West 2010)) during her minority to assist her in locating the Robert Sanden that was her father. After reaching age 18, she could have retained a private investigator or a private attorney to locate Robert, as she did in retaining the Legal Assistance Foundation in bringing her claim in the court below. Her attempts to locate Robert through periodic Internet searches suggests that she suspected Robert was still alive, despite Ana's denials, which Collett characterized as "odd and frustrating." Additionally, under the Parentage Act, she was entitled to assistance from a number of "public offices," including the Attorney General's office and the Department, to obtain information about Robert's physical whereabouts, employment status, and salary from his employer or utility provider "for the purpose of establishing a child's paternity." 750 ILCS 45/14.5 (West 2010). Although the Attorney General's office contends that the Department declined to recoup child support payments from Robert to protect Collett from the gruesome truth about her conception, once Collett turned 18, she was entitled to decide whether to pursue her own claim and seek the assistance of a public office in doing so. See 89 Ill. Adm. Code 160; 89 Ill. Adm. Code 160.35(d) (1997) (a parent may seek a good-faith exception from the requirement to cooperate with the Department's investigation to protect the well-being of a minor child).

¶ 59      The majority's analysis focuses almost exclusively on whether Ana was justified in refusing to tell Collett of Robert's identity and the details of her birth. See *supra* ¶¶ 24-25. I certainly sympathize with Ana's position; however, Ana is not a party to this lawsuit and her actions and motivations are irrelevant for purposes of determining whether Collett exercised reasonable diligence in discovering Robert's identity during the statutory limitations period, which is the legal question before us. As I have explained above, Collett had other resources available to her to discover Robert's identity.

¶ 60      The majority's only mention of Collett's actions in concluding that equitable tolling applies was its statement that "[a]fter learning the truth [about Robert's identity from Ana], Collett made diligent inquiry, discovered Robert living in Florida, and filed her petition a mere three months later." See *supra* ¶ 25. This characterization seems to conflate the equitable tolling doctrine, which postpones the expiration of the limitations period after a cause of action has accrued, with the discovery rule, which postpones the "start of the period

-13-

of limitations until the injured party knows or reasonably should know of the injury and knows or reasonably should know that the injury was wrongfully caused." *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 20. Collett has never argued that the discovery rule be applied in this case and the majority's analysis is misguided.

¶ 61 Accordingly, I am forced to conclude that despite knowing Robert's first and last names for "years," Collett's periodic internet searches "over the years" did not constitute a reasonably diligent effort to discover Robert's identity during the limitations period provided by law such that the limitations period should have been tolled. See *Griffin*, 369 Ill. App. 3d at 416. I would conclude that her claim is time barred. See *Wisniewski v. Diocese of Belleville*, 406 Ill. App. 3d 1119, 1181 (2011) (Spomer, J., dissenting) (concluding that although the plaintiff may not have known the full extent of his injuries from clergy sexual abuse prior to the expiration of the statute of repose, he had sufficient knowledge to investigate and bring timely claims against the defendant).

¶ 62 It is important to remember that as a reviewing court, we are often called upon to resolve controversial disputes that end with seemingly harsh results, but our obligation is to apply the law fairly, regardless of the outcome. As a unanimous supreme court explained, a defendant elects to invoke the affirmative defense of an expired limitations period and the defendant alone is "responsible for that decision and its impact on the plaintiff's ability to seek relief through the courts." *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 413-14 (2009) (declining to extend the limitations period for an untimely claim of clergy sexual abuse). "Our function, as a court of review, is simply to insure that the law is applied correctly." *Doe A.*, 234 Ill. 2d at 414. See also *Clay*, 189 Ill. 2d at 614 (declining to apply equitable tolling, fraudulent concealment, or the discovery rule to salvage an untimely claim of clergy sexual abuse); *M.E.H. v. L.H.*, 177 Ill. 2d 207, 219 (1997) (declining to allow plaintiffs to pursue claims of child sexual abuse against their father when complaint was filed two years after discovering abuse and almost four years after expiration of the repose period, despite their claims of an ongoing investigation into the extent of the abuse).

¶ 63 Because I would have affirmed dismissal on the basis of equitable tolling, I would also address Collett's remaining claims that Robert is equitably estopped from asserting a statute of limitations defense, that Robert fraudulently concealed the cause of action and prevented Collett from timely filing her claim, and that Collett was denied equal protection of the law.

¶ 64 While equitable tolling addresses the suspension of the limitations period, equitable estoppel applies only after the limitations period has expired. *Weatherly v. Human Rights Comm'n*, 338 Ill. App. 3d 433, 440 (2003). Equitable estoppel addresses whether a party should be prevented from asserting the passage of the limitations period as a defense to the suit because his own inequitable conduct caused a plaintiff to delay filing suit until after the limitations period has run. *Weatherly*, 338 Ill. App. 3d at 440. "To establish equitable estoppel, the party claiming estoppel must demonstrate that: (1) the other party misrepresented or concealed material facts; (2) the other party knew at the time the representations were made that the representations were untrue; (3) the party claiming estoppel did not know that the representations were untrue when the representations were made and when they were acted upon; (4) the other party intended or reasonably expected the representations to be acted upon by the party claiming estoppel or by the public generally;

-14-

(5) the party claiming estoppel reasonably relied upon the representations in good faith to their detriment; and (6) the party claiming estoppel has been prejudiced by his reliance on the representations." *Parks v. Kownacki*, 193 Ill. 2d 164, 180 (2000).

¶ 65    Collett argued that Robert intimidated Ana "with violence and threats, foreseeably causing [Ana] to hide [Robert's] identity and other facts essential to Collett's claim from Collett herself." Furthermore, she contends that Ana's "well-founded fear of [Robert], and the violence he perpetrated on [Ana], caused her to tell Collett that [Robert] was dead, in an effort to protect [Collett] from [Robert]." Thus, Collett argued that she could not timely file suit against Robert because Ana refused to tell her Robert's identity, although Ana's refusal resulted from Robert's inequitable conduct. This court has previously held that equitable estoppel is not available to a plaintiff under these circumstances, where the alleged conduct and representations that induced forbearance of the lawsuit were made by a nonparty, as Ana is here. *In re Custody of D.A.*, 201 Ill. App. 3d 810, 820 (1990); see also *Chicago Park District v. Kenroy, Inc.*, 78 Ill. 2d 555, 563-64 (1980). That is, Robert's alleged misconduct toward Ana cannot be extrapolated to Collett as the basis for Collett's claim of estoppel. Furthermore, Collett has not alleged that Robert made any representations to her personally that induced her to forego filing suit. Where no party has made a misrepresentation or concealed a material fact to induce forbearance of a lawsuit, a defendant will not be estopped from raising the limitations period as a defense. *Parks*, 193 Ill. 2d at 180.

¶ 66    Collett alternatively argued that as her natural parent, Robert had "an affirmative duty to support her" and that his failure to observe that duty may support the application of equitable estoppel. However, that argument is not well taken. She appears to be trying to fit her argument into the fact patterns of *Witherell v. Weimer*, 85 Ill. 2d 146 (1981), and *DeLuna v. Burciaga*, 223 Ill. 2d 49 (2006), in which the supreme court held that equitable estoppel and related procedural devices may apply where a fiduciary fails to disclose information necessary to developing the client's cause of action. However, the concerns in those cases were much different than those argued here by Collett. *Witherell* involved the obligation of a doctor to disclose information about medical care when confronted by his patient; similarly, *DeLuna* involved the obligation of a lawyer to disclose information about the course of litigation when meeting with a client. In both cases, the fiduciary had a "duty to disclose material facts concerning the existence of a cause of action" and the court was concerned with the plaintiffs' reliance on the fiduciaries' silence to forego further investigation or the filing of a lawsuit. *DeLuna*, 223 Ill. 2d at 77. The court's concern was that in those relationships of trust, the patient or client is "not qualified to monitor the technical aspects" of the relationship (*DeLuna*, 223 Ill. 2d at 77) and accepts the professionals' representations "without question" (*Witherell*, 85 Ill. 2d at 159).

¶ 67    Importantly, in *Witherell* and *DeLuna*, the fiduciary relationships between the prospective plaintiffs and defendants had already been established and the duty to disclose facts bearing on the existence of a cause of action arose out of those existing relationships. Here, assuming that the duties of the fiduciaries in *Witherell* and *DeLuna* would even extend to a parent-child relationship, there has been no adjudication of parentage that would impose a duty on Robert to disclose any facts related to this cause of action. In essence, Collett attempted to assert a duty arising out of a putative parental relationship in order to extend the time for filing a

-15-

claim aimed at establishing that parental relationship, which I find untenable.

¶ 68     I also would reject Collett's argument that Robert fraudulently prevented her from discovering the cause of action. The supreme court has made resolutely clear that a claim for fraudulent concealment must be specifically alleged in the complaint, which Collett did not do here. See *Clay*, 189 Ill. 2d at 613; *DeLuna*, 223 Ill. 2d at 76.

¶ 69     Finally, I would reject Collett's claim that barring her complaint as untimely deprives her, as an illegitimate child, of the equal protection of the law. She argued that she is entitled to a "reasonable opportunity" to assert her claims. She relied on the Second District Appellate Court opinion *Tersavich v. First National Bank & Trust Co. of Rockford*, 194 Ill. App. 3d 972, 978 (1990), in support of her argument. First, having known Robert's first and last names for "years" and having resources available to help her find him, I would not say that she lacked a "reasonable opportunity" to bring her claim under the Parentage Act. Rather, she was not diligent in pursuing her claim against him. Additionally, the supreme court rejected the appellate court's analysis in *Tersavich*, although it affirmed the appellate court's judgment on different grounds. *Tersavich v. First National Bank & Trust of Rockford*, 143 Ill. 2d 74, 81 (1991) ("[t]he granting of defendant's motion for summary judgment, based upon the statute of limitations in the Parentage Act, was erroneous"). Thus, the appellate court's opinion in *Tersavich* is advisory, at best. In any event, for that and other reasons,[1] I would decline to apply it here.

---

[1]For example, the *Tersavich* court redefined the manner in which a claim under the Act *accrues*, in the parlance of the discovery rule, and that newly created standard was in large part "derived from firmly rooted principles of the law of trusts." *Tersavich*, 194 Ill. App. 3d at 980. Thus, it is not relevant to the facts of this case.