2019 IL App (1st) 190875

FIRST DIVISION
October 15, 2019

No. 1-19-0875

| | | |
|---|---|---|
| IN THE INTEREST OF GRACE C., | ) | Appeal from the Circuit Court of |
| | ) | Cook County |
| (The People of the State of Illinois, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | No. 17 JA 274 |
| v. | ) | |
| | ) | |
| Levi C., | ) | Honorable Richard A. Stevens |
| Defendant-Appellant). | ) | Judge Presiding |

PRESIDING JUSTICE GRIFFIN delivered the judgment of the court, with opinion. Justices Hyman and Pierce, concurred in the judgment and opinion.

**OPINION**

¶ 1    Respondent Levi C. was arrested and pled guilty to a charge of domestic battery for abusing his daughter Grace C. During the abuse and neglect proceedings, Grace C. informed the court and her guardian *ad litem* that Levi C. might not be her biological father. A paternity test was conducted and it was determined that Levi C. is not Grace C.'s biological father. The guardian *ad litem*, on behalf of Grace C., petitioned the trial court to declare the non-existence of a parental relationship between Levi C. and Grace C.

¶ 2    Levi C. moved to dismiss Grace C.'s petition on the basis that it was filed too late. The Illinois Parentage Act of 2015 (750 ILCS 46/101 *et seq*. (West 2016)) stipulates that an action to declare the non-existence of a parent-child relationship must be brought within 2 years of the petitioner knowing the facts that give rise to the petition. 750 ILCS 46/205(b) (West 2016). Levi C. argues that because Grace C. was told by him and by her mother that Levi C. might not be her

biological father more than two years earlier, Grace C.'s petition is barred as untimely. Like the trial court, we reject Levi C.'s argument, and we affirm.

¶ 3                                     I. BACKGROUND

¶ 4      Grace C. was born July 3, 2005. Respondent Levi C. was named as Grace C.'s father on her birth certificate. Levi C. signed the birth certificate as an acknowledgement of paternity. When Grace C. was three months old, her mother left. Grace C. lived under the care and custody of Levi C. her whole life after that point, while intermittently staying with her mother. Grace C. and her mother have had a strained relationship, and her mother now lives in Montana. When Grace C. was eight or nine years old, her mother told her that Levi C. was not her biological father. Levi C. also once mentioned to Grace C. when she was 10 years old that he was not her biological father.

¶ 5      On March 23, 2017, officers from the Chicago Police Department responded to a call at a liquor store. Both Grace C. and Levi C. were present. Twelve-year-old Grace C. told the officers that she had run away from home because Levi C. had struck her in the face earlier that day. She told officers that Levi C. had punched her in the back the prior day, and that the day before that, he had whipped her with a belt. The officer could see visible swelling on Grace C.'s face, and they took Levi C. into custody. Levi C. pleaded guilty to domestic battery.

¶ 6      The State filed a petition for adjudication of wardship for Grace C. At the initial hearing on the petition for an adjudication of wardship, a guardian *ad litem* was appointed for Grace C., but Grace C. was not present. Levi C. was, however, present and he informed the court that he was Grace C.'s father. The trial court entered an order of paternity in favor of Levi C. The matter proceeded through the Juvenile Court Act process to adjudication, disposition, and permanency hearings. Levi C. denied abusing Grace C., but the court found that Levi C. had abused Grace C.

Levi C. began participating in therapy with DCFS's reunification services and the trial court set a goal of returning Grace C. to home within 12 months.

¶ 7    Almost 10 months later, the parties appeared in court for another permanency hearing. At the hearing, Grace C. informed the trial court judge and her guardian *ad litem* that Levi C. might not be her biological father. Grace C. requested that the trial court order paternity testing. Grace C. indicated that she did not want visitation with Levi C. and did not want to return home, but instead wanted to be adopted by her foster mother. Levi C. objected to paternity testing. Over Levi C.'s objection, the trial court ordered paternity testing.

¶ 8    A report from DNA Diagnostic Center was filed with the juvenile court indicating that Levi C. was not the father. Through her guardian *ad litem*, Grace C. filed a petition to declare the non-existence of a parent-child relationship and to disestablish Levi C.'s parentage. Levi C. filed a motion to dismiss the petition, arguing that the petition was not timely.

¶ 9    The Illinois Parentage Act of 2015 (750 ILCS 46/101 *et seq*. (West 2016)) provides a process that governs "proceedings to declare the non-existence of a parent-child relationship." 750 ILCS 46/205 (West 2016). The Act provides that the proceedings must be brought within 2 years of when the petitioner knew or should have known about the facts that support the petition. 750 ILCS 46/205(b) (West 2016).

¶ 10    Levi C. argues that the guardian *ad litem*'s petition, brought on behalf of Grace C., is untimely because Grace C. knew that Levi C. was not her father more than two years before filing her petition. Levi C. points to Grace C.'s own testimony in which she averred that both her mother and Levi C. had informed her that Levi C. was not her biological father by the time she was 10 years old. Grace C. was 13 years old when the petition to declare the non-existence of a parental relationship was filed on her behalf. The trial court denied Levi C.'s motion to dismiss

the petition, and instead vacated its prior order of paternity. The trial court entered a finding of non-paternity consistent with the results of the DNA test and disestablished Levi C. as Grace C.'s legal parent. Levi C. appeals that judgment.

¶ 11                                    II. ANALYSIS

¶ 12    Levi C. appeals the trial court's rejection of his motion to dismiss Grace C.'s petition to declare the non-existence of a parent-child relationship.[1] He argues that Grace C.'s admissions under oath that she was told by her mother and by Levi C. himself that he was not her biological father more than two years before her petition was filed should have resulted in the dismissal of her petition.

¶ 13      Levi C. brought his motion to dismiss Grace C.'s petition under section 2-619(a)(5) of the Illinois Code of Civil Procedure (735 ILCS 5/2-619(a)(5) (West 2016)). A section 2-619 motion to dismiss admits the legal sufficiency of a pleading. 735 ILCS 5/2-619 (West 2016). The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of the litigation. *In re Estate of Gallagher*, 383 Ill. App. 3d 901, 903 (2008). Although a section 2-619 motion to dismiss admits the legal sufficiency of a pleading, it raises defects, defenses, or some other affirmative matter appearing on the face of the pleading or established by external submissions, that defeat the plaintiff's claim. *Jones v. Brown-Marino*, 2017 IL App (1st) 152852, ¶ 20.

¶ 14    An action to declare the non-existence of a parent-child relationship may be brought by the child, the birth mother, or a person presumed to be a parent under the Act. 750 ILCS 46/205(a) (West 2016). However, such an action is barred if it is brought later than 2 years after the petitioner knew or should have known of the relevant facts. 750 ILCS 46/205(b) (West 2016). The question presented in this appeal is, when it is the child bringing the action, whether

---

[1] Levi C. did not file a reply brief in support of his appeal.

the child's petition is barred as untimely if the child knows or might know more than two years before bringing the action that someone presumed to be her parent is not her biological parent. We hold that the child is not barred from bringing a petition under such circumstances, so the trial court correctly denied Levi C.'s motion to dismiss the petition as untimely.

¶ 15    In Illinois, a child does not have the legal capacity to sue. *Severs v. Country Mutual Insurance Co.*, 89 Ill. 2d 515, 520 (1982). In order for a child to pursue a legal proceeding in her own name, the minor child must appear by a guardian, guardian *ad litem*, parent, next friend, or custodian. *Klak v. Skellion*, 317 Ill. App. 3d 1092, 1095 (2000). This precept of a child lacking capacity to sue applies to the Illinois Parentage Act, despite the Act providing that an action "may be brought by the child." *Id*. at 1095-96. The parties all agree that Grace C., on her own, could not have brought a petition to disestablish Levi C. as her parent at the time she was informed that he might not be her biological father.

¶ 16    Nonetheless, Levi C. argues that Grace C.'s knowledge of the possibility that he was not her biological father more than two years before the petition was filed on her behalf makes the petition untimely. However, it is not until the child has the legal capacity to bring the action, at the very earliest, that the limitations period can run against the child. Limitations periods do not run against children, let alone expire, while the children continue to operate under the legal incapacity of their age. *Ferguson v. McKenzie*, 202 Ill. 2d 304, 312 (2001); *Parks v. Kownacki*, 193 Ill. 2d 164, 176 (2000); *Eiseman v. Lerner*, 64 Ill. App. 3d 185, 188 (1978). In other contexts, we have observed that the Act at issue in this case, the Illinois Parentage Act, contains "a two-year statute of limitations only when a child reaches the age of majority so that such children have a reasonable opportunity to assert their rights." *Tersavich v. First National Bank & Trust Co. of Rockford*, 194 Ill. App. 3d 972, 980 (1991). An unrepresented child's knowledge of

a triggering event under the Act is irrelevant because the child cannot bring a petition under the Act. See *Klak*, 317 Ill. App. 3d at 1096. The child's knowledge is not actionable until the child reaches the age of 18 or, at a minimum, becomes represented by a party entitled to initiate legal proceedings on the child's behalf.

¶ 17    Like in *Klak*, where we held that an unrepresented child is entitled to bring an action to determine the existence of a parent-child relationship two years after reaching the age of 18 (*Klak*, 317 Ill. App. 3d at 1096), a child that becomes represented by a guardian *ad litem* has two years from attaining capacity to sue to bring an action to determine the existence of a parent-child relationship. Even though the petition is brought on the child's behalf and the child might fairly be said to be the petitioner, the child cannot truly become the "petitioner" until reaching the age of majority or having a guardian *ad litem* appointed that can act on her behalf.

¶ 18    Under the statute, the time for filing the petition begins to run when the person bringing the petition acquires the knowledge that is the basis for the petition. But the child cannot be the person bringing the petition until a guardian is appointed. Knowledge, for purposes of the statutory limitations period, has to be vested in someone that has the capacity to be the petitioner in order for the limitations period to begin running. A child's statutory right to declare her parental relationships should not hinge on whether the child has someone to adequately represent her interests at the time of learning the possible facts that might give rise to the action. See *Severs*, 89 Ill. 2d at 520 (a child with a meritorious cause of action but incapable of initiating any proceeding for its enforcement will not be left to the whim or mercy of some self-constituted next friend to enforce its rights).

¶ 19    Levi C. would have us hold that then-nine-year-old Grace C. should have retained a lawyer to disestablish him as a legal parent immediately when she was told that he might not be

her biological father. And Levi C. would further have us hold that Grace C.'s failure to act on the information that he might be not be her biological father when she was nine years old forever bars her from raising the issue. That interpretation of the Act lacks any basis in reason.

¶ 20    The problems with Levi C.'s proposed interpretation of the Act are evident from his very own argument. Levi C. admits that "a guardian ad litem was appointed for [Grace C.] three years after [Grace C.] learned the relevant facts, and [Grace C.] thus *had no realistic opportunity to file a petition to disestablish Levi C.'s parentage.*" (Emphasis added). Levi C. would have us hold that the child is barred from bringing the action before the child even has, in his words, a realistic opportunity to bring the action. The statute, and common sense, supports no such interpretation.

¶ 21    Moreover, Grace C. did not, in fact, *know* that Levi C. was not her father when she was nine or ten years old. She did not even know Levi C. was not her father when she discussed the matter with her guardian *ad litem* and the trial court judge. By the time Grace C. was 10 years old, she was simply told that Levi was not her biological father by her mother, with whom she had a difficult relationship, and by Levi C. himself. But the evidence does not demonstrate that she had any way to actually know that Levi C. was, in fact, not her biological father.

¶ 22    During these proceedings, both Levi C. and Grace C.'s mother represented to the court that Levi C. was Grace C.'s father. They attempted to *establish* Levi C.'s paternity in this very action. Levi C. signed Grace C.'s birth certificate as her father, raised her as his daughter, and acknowledged paternity several times. The evidence does not show that Grace C. could have known with any level of certainty that Levi C. was not actually her father until the paternity test from an uninterested source conveyed that information to her. Grace C. had simply been told that Levi C. was not her father by sources that she may or may not have been able to rely upon; but at the same time Levi C. had similarly claimed Grace C. as his daughter on several occasions.

¶ 23    To illustrate Grace C.'s uncertainty about the issue, when she first raised the issue of Levi C.'s questionable paternity, she told her guardian *ad litem* and the trial court judge that she was "not for sure" whether Levi C. was her biological father. Grace C. continued, "Well, all the rest of the people that I live with said that he was my real father, but one time he said that he wasn't my real father." Grace C.'s level of uncertainty around the issue does not rise to the level of "knew or should have known" the facts surrounding non-paternity to trigger the limitations period under the statute, especially when we are examining the knowledge of a 9 or 10 year old child. The record does not reveal that at any time Grace C. stated that she had any certain knowledge that Levi C. was not her biological father. Levi C. failed to meet his burden of establishing that Grace C. knew or should have known the relevant facts to demonstrate the non-existence of a parent-child relationship such that she should be barred from bringing the petition at the time that she brought it.

¶ 24    The guardian *ad litem* and the State both filed response briefs in this appeal in support of Grace C.'s interests in declaring the non-existence of a parent-child relationship. However, the guardian *ad litem* and the State differ slightly in their interpretations of the statute insofar as it concerns the point at which the two-year period for bringing the petition began to run. The guardian *ad litem* suggests that the statutory period began to run when Grace C. appeared in the trial judge's chambers and expressed that Levi C. might not be her biological father. The State suggests that the statutory period began to run when the guardian *ad litem* was appointed to represent Grace C.'s interests in this matter.

¶ 25    Under either standard suggested by the parties, the petition in this case was timely filed. So this case does not demand that we choose one proposed interpretation or other. We want to briefly discuss the conflict between the guardian *ad litem* and the State's position even though a

resolution of that conflict will be left for another day.

¶ 26    The State's position may be antagonistic to some of the tenets of the law governing minors and may have undesirable unintended consequences. But there is likewise a body of support for the State's position in the form of case law that suggests that the statute of limitations should be deemed to begin running when the minor becomes represented by a guardian and, therefore, the minor's legal incapacity is removed.

¶ 27    The State suggests that the two-year period for bringing the petition to declare the non-existence of a parent-child relationship started immediately when the guardian *ad litem* was appointed (citing *Simcox v. Simcox*, 131 Ill. 2d 491, 499 (1989) (Ryan, J., specially concurring). This is so, according to the State, because Grace C. was already possessed with the knowledge that Levi C. might not be her father and, when the guardian was appointed, Grace C. had someone willing and able to bring the petition on her behalf. The State points out that Levi C.'s paternity was a necessary component of this case, so "it was incumbent upon [the guardian *ad litem*] to investigate facts relevant to respondent-father's paternity before litigating the issue of paternity on Grace's behalf."

¶ 28    In this case, the State's position makes perfect sense and can be applied without issue. However, in a future similar case dealing with an abused minor, it is easy to see the issue of biological paternity never being discussed between the guardian *ad litem* and the minor. Even if the minor has some idea that her parent might not be a biological one, she very well might not report that to the guardian *ad litem* right away. The State's position suggests the imposition of a duty on guardians *ad litem* to inquire into biological relationships between presumed parents and children even when those guardians might have no apparent reason to question the biological legitimacy of the parent-child relationship.

¶ 29    The State's position elevates a minor's capacity to that of an adult at the moment a guardian is appointed. The State's interpretation causes no issues in this case, but Grace was 11 years old when the guardian *ad litem* was appointed to her and she was able to articulate her questions about paternity to the trial judge and to her guardian *ad litem*. It may be very different, however, if the minor is five years old when the guardian is appointed and is unable to articulate such questions about biological paternity or maternity in the same manner, even if the child has been told about the possibility of a legal parent being a non-biological one. Yet, under the State's interpretation of the Act's limitations period, any issue about paternity would be barred in the future for that five year old simply because a guardian *ad litem* was appointed, even though the issue of paternity might only have been tangentially involved in the abuse and neglect proceeding or whatever other proceeding necessitated the appointment of the guardian. If the guardian did not have any reason to know or any reason to investigate whether biological paternity was in question, the issue might very well not be raised and could produce harsh results for the child.

¶ 30    On the other hand, our courts have indeed discussed the appointment of a guardian as an event to trigger the statute of limitations. See, *e.g.*, *Kenney v. Indus. Commission*, 93 Ill. 2d 516, 520 (1983) ("the limitations of time provided by the [Workers' Compensation] Act did not run against a minor so long as he was without a guardian."); *Simcox*, 131 Ill. 2d at 499 (Ryan, J., specially concurring); and see generally Michele Meyer McCarthy, *Effect of Appointment of Legal Representative for Minor on Running of State Statute of Limitations Against Minor*, 1 A.L.R. 6th 407 (Originally published in 2005).

¶ 31    We adopt neither proposal in this case because this appeal does not require us to resolve the issue. We simply note that both positions enjoy some legal support, but that courts and

litigants should be aware of the prospective pitfalls of those positions as well.

¶ 32    Nevertheless, the petition to declare the non-existence of a parent-child relationship in this case was clearly not time barred, so we affirm.

¶ 33                              III. CONCLUSION

¶ 34    Affirmed.