2025 IL App (1st) 231911

First Division
March 31, 2025

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JOSE LUIS RAMIREZ ARRIZON JR., | ) | Appeal from the |
| | ) | Circuit Court of Cook County, Illinois |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 23 CH 00644 |
| | ) | |
| TRANSUNION, LLC, | ) | |
| | ) | Honorable |
| Respondent-Appellee. | ) | Celia A. Horan |
| | ) | Judge, presiding. |

JUSTICE COBBS delivered the judgment of the court, with opinion.
Justices Lavin and Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1     This case has a long and winding history, beginning in California federal district court, peaking at the United States Supreme Court, and finding its way halfway across the country to Illinois state court, in order to pursue consumer protection-based relief against respondent-appellee, TransUnion, LLC (TransUnion). TransUnion has been accused, and found guilty, in multiple lawsuits across the country for violating the federal Fair Credit Reporting Act, 18 U.S.C. § 1681, *et seq.* (FCRA) (West 2020). Specifically, TransUnion has been accused of maintaining and disseminating inaccurate credit reports that, in effect, designate a particular consumer as a

terrorist or other type of criminal based on the unfortunate coincidence of sharing identical or similar names. Relevant to our case, in 2012, TransUnion was sued by a separate plaintiff in the federal district court of Northern California in both an individual and class action lawsuit. Following class certification and a jury trial, TransUnion was found guilty. However, that verdict was partially reversed after the United States Supreme Court deemed some members of the certified class ineligible for relief based on lack of standing. The case was remanded and eventually resolved through settlement, but the class members deemed no longer to have standing were dismissed from the case in January 2023.

¶ 2    Plaintiff-appellant here, Jose Luis Ramirez Arrizon Jr., was a member of the decertified class dismissed from the lawsuit. On the day his claims were dismissed, plaintiff filed a class action complaint against TransUnion in the circuit court of Cook County, asserting similar violations of the FCRA. TransUnion moved to dismiss the complaint as untimely and argued that the FCRA's statute of limitations could not be tolled pursuant to Illinois' bar against "cross-jurisdictional tolling." Plaintiff responded that the complaint was timely pursuant to Illinois' equitable tolling doctrine. Following oral argument, the circuit court granted the motion to dismiss.

¶ 3    Plaintiff now appeals, arguing that the circuit court improperly dismissed his proposed class action complaint by failing to consider his preferred theory of tolling. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 4                                  I. BACKGROUND

¶ 5    The following facts are derived from the record on appeal,[1] as well as from other cases of which we may take judicial notice, and which we recite as necessary for our disposition.[2]

¶ 6                          A. The Federal Litigation

¶ 7                          1. Fair Credit Reporting Act

¶ 8    The FCRA regulates consumer reporting agencies that compile and disseminate personal information about consumers. *TransUnion, LLC*, 594 U.S. at 418. Its purpose is to promote "fair and accurate credit reporting" and to protect consumer privacy. 18 U.S.C. § 1681(a) (West 2020). Relevant here, the FCRA "imposes a host of requirements concerning the creation and use of consumer reports." *Spokeo Inc., v. Robbins*, 578 U.S. 330, 335 (2016). Specifically, the FCRA requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy" in consumer reports. 18 U.S.C. § 1681e(b) (West 2020). The FCRA also provides that consumer reporting agencies must, upon request, disclose to the consumer "[a]ll information in the consumer's file at the time of the request." 18 U.S.C. § 1681g(a)(1) (West 2020). Finally, the FCRA compels consumer reporting agencies to, in accordance with the request, provide the consumer with a written disclosure informing them of their summary of rights as prepared by the Consumer Financial Protection Bureau. 18 U.S.C. § 1681g(c)(1)-(2) (West 2020). Consumers may sue and recover statutory and punitive damages for certain violations. See 18 U.S.C. § 1681n(a) (West 2020). Section 1681p provides that a claim must be brought within two

---

[1]We take all well-pled facts of the complaint as true, even on a section 2-619 motion to dismiss. See *Village of Willow Springs v. Village of Lemont*, 2016 IL App (1st) 152670, ¶¶ 22-23.

[2]We may also take judicial notice of other legal authority relevant to the case. See Ill. R. Evid. 201 (eff. Jan. 1, 2011); *Krewionek v. McKnight*, 2022 IL App (2d) 220078, ¶ 36. In that regard, we look to the published opinions of the underlying federal lawsuit, *Ramirez v. TransUnion, LLC*, 301 F.R.D. 408 (N.D. Cal. 2014); the Ninth Circuit Court of Appeals opinion, *Ramirez v. TransUnion, LLC*, 951 F.3d 1008 (9th Cir. 2020), and the United States Supreme Court's decision which partially reversed the judgment of the Ninth Circuit, *TransUnion, LLC, v. Ramirez*, 594 U.S. 413 (2021).

years after the date of discovery, or five years after the alleged violation, whichever is earlier. 18 U.S.C. § 1681p (West 2020).

¶ 9                                  2. TransUnion and the OFAC List

¶ 10    The United States Department of the Treasury administers the Office of Foreign Assets Control (OFAC). *Id.* OFAC directs and enforces economic trade sanctions based on U.S. foreign policy, economic, and national security goals.[3] *Ramirez*, 301 F.R.D. at 413. Relevant here, OFAC directs sanctions against, among others, terrorists, international narcotics traffickers, and persons involved in the proliferation of weapons of mass destruction. *TransUnion, LLC*, 594 U.S. at 419. To enforce the sanctions, OFAC publishes a list of "Specially Designated Nationals" and other sanctions lists on its website (the OFAC List). *Ramirez*, 301 F.R.D. at 413. People named in the OFAC List are generally deemed ineligible for credit in the United States, as it is generally unlawful to transact business with any person named therein. *TransUnion, LLC*, 594 U.S. at 419; see 31 C.F.R. Pt. 501 App. A, II (Types of Responses to Apparent Violations) (West 2020).

¶ 11    TransUnion is one of three major credit reporting agencies in the country. *TransUnion, LLC*, 594 U.S. at 419. It compiles personal and financial information to create individual consumer reports. *Id*. Such reports are then sold to third-party entities such as banks, landlords, and car dealerships, to utilize and determine the creditworthiness of an individual consumer. *Id.* In 2002, TransUnion began using a product called "OFAC Name Screen Alert." *Id.* If requested by a third party, TransUnion would conduct its ordinary consumer credit check and then use third-party

---

[3]See also United States Department of Treasury Office of Foreign Assets Control, "Sanctions List Service," found at: https://ofac.treasury.gov/sanctions-list-service (last visited March 3, 2025); *Edward Sims Jr. Trust v. Henry County Board of Review*, 2020 IL App (3d) 190397, fn. 6 (courts may take notice of information on a government website); *Ashley v. Pierson*, 339 Ill. App. 3d 733, 739-40 (2003); Ill. R. Evid. 201(b) (a judicially noticed fact is one not subject to reasonable dispute because it is generally well-known within the territorial jurisdiction of the trial court or capable of accurate and ready determination whose sources' accuracy cannot reasonably be questioned).

software to compare the consumer's name against the OFAC List. *Id.* If a consumer's name matched a name on the list, TransUnion would place an alert on the credit report that indicated that the consumer's name was a "potential match." *Id.* at 419-20. TransUnion did not attempt to verify this information against other data other than first and last names. *Id.* at 420. As such, many "false positives" were generated, given that thousands of Americans happened to share names with some of the individuals listed therein. *Id.*

¶ 12                     3. *TransUnion v. Ramirez* (The Federal Action)

¶ 13    In February 2012, the plaintiff in the federal action, Sergio Ramirez, filed an individual and class-action complaint against TransUnion in the Northern District of California, which alleged various violations of the FCRA. *Id.* at 420-21. Therein, Ramirez alleged that he had unsuccessfully attempted to buy a car after his credit check produced an OFAC alert against his name. *Id.* Ramirez subsequently requested a copy of his credit file, and TransUnion sent him a copy as well as a summary of rights. *Id.* at 420. However, the mailing did not mention the OFAC alert. *Id.* Ramirez received a second mailing the next day, which informed him that his name was a potential match to a name on the OFAC List. *Id.* The second letter did not include an additional copy of his summary of rights. *Id.* Ramirez consulted with an attorney, and at some point, TransUnion removed the alert from his filing. *Id.*

¶ 14    As to his claims, first, Ramirez alleged that TransUnion's use of the name screen product failed to follow reasonable procedures to ensure the accuracy of information in his credit file pursuant to section 1681e(b). *Id.* Second, he alleged that, pursuant to section 1681g(a)(1), TransUnion had failed to provide him with all information contained in his credit file, which included the first mailing that had failed to indicate that his name was a potential match to someone

on the OFAC List. *Id.* Third, pursuant to 1681g(c)(2), he alleged that TransUnion had failed to provide him with a summary of his rights in its second mailing. *Id.*

¶ 15    Ramirez also moved to certify a class of individuals who were purportedly sent deficient second mailings between January 1, 2011, and July 26, 2011. *Id.* at 421. Before trial, the district court certified a stipulated class of 8,185 members. *Id.* However, the parties also stipulated that only 1,853 members, including Ramirez, actually had their credit reports disseminated during that period. *Id.* Nevertheless, the district court still certified all 8,185 members after finding that each member had sufficient standing. *Id.* The case proceeded to trial, and a jury verdict was returned on all three counts with each class member receiving statutory and punitive damages. *Id.* at 421-22. The Ninth Circuit Court of Appeals affirmed that all class members had standing but reduced the punitive damages award. *Id.* at 422.

¶ 16    On appeal to the United States Supreme Court, the Court determined that not all class members had sufficient standing. *Id.* at 422, 430-42. The Court agreed that the 1,853 class members who had their reports disseminated had sufficiently alleged "concrete harm." *Id.* at 431-33, 439-42. However, it disagreed that the remaining class members, whose reports had only contained misleading OFAC alerts but had not been disseminated, had standing. *Id.* at 433-34. As such, the Court ordered that, on remand, the Ninth Circuit should consider whether continued class certification was appropriate. *Id.* at 442.

¶ 17    At some point, the case was remanded to the district court. On December 15, 2022, following mediation proceedings, the district court granted final approval of a class action settlement. Pursuant to the settlement, the parties purportedly settled the claims of the 1,853 class members determined to have standing, as well as an additional 147 class members who

demonstrated standing pursuant to a claims process. On January 23, 2023, the district court also dismissed, without prejudice, the claims of the individuals without sufficient standing.[4]

¶ 18                                    B. Illinois Case – *Arrizon v. TransUnion*

¶ 19    The plaintiff before us now, Jose Luis Ramirez Arrizon, Jr., was among the class members whose claims were dismissed in the federal action. The same day his claims were dismissed, he filed a two-count class action complaint and jury demand in the circuit court of Cook County (the Illinois case). The complaint contained similar allegations and claims, namely that TransUnion had violated sections 1681g(a) (count I) and 1681g(c) (count II) of the FCRA. Plaintiff also filed a motion to certify a putative class.

¶ 20                                    1. TransUnion's Motion to Dismiss

¶ 21    On March 9, 2023, TransUnion filed a motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2020)). Among other bases for dismissal, TransUnion argued that plaintiff's claims were time-barred pursuant to the FCRA's statute of limitations. According to TransUnion, the FCRA required claimants to bring suit either within two years from the date of discovery of the alleged violation, or within five years of the date of the violation, whichever is earlier. Thus, TransUnion reasoned, if the alleged violations occurred between January and July 2011, the latest possible date plaintiff could have brought his claims was in July 2016, more than six years preceding the filing of the Illinois case. Further, TransUnion continued, plaintiff could not avail himself of any tolling doctrine to save the claims. According to TransUnion, although federal courts allowed "class action tolling" pursuant to the United States Supreme Court's case, *American Pipe & Construction Co.*, "cross-jurisdictional

---

[4]The appellate record does not contain the settlement or dismissal order.

tolling," *i.e.*, when the initial class-action claims began in federal court and were subsequently brought in state court following class decertification, was not allowed in Illinois state court. In support of this proposition, TransUnion cited our supreme court decision in *Portwood v. Ford Motor Co.*, 183 Ill. 2d 459 (1998), arguing that *Portwood* was dispositive and "remarkably similar" to the facts at issue here.

¶ 22    In response, plaintiff argued that the FCRA claims were timely under Illinois' doctrine of "equitable tolling," which was a separate and independent concept from class action tolling. Plaintiff asserted that equitable tolling applied to cases where the plaintiff had diligently filed a complaint after he or she had previously brought claims within the wrong forum, if the defendant had actively misled the plaintiff, or if the plaintiff had been prevented from asserting his or her rights in some extraordinary way. According to plaintiff, the first and third conditions applied here.

¶ 23    As to the first condition, plaintiff argued that he had asserted claims in the "wrong forum" based upon his "reasonable understanding" of prior federal law regarding standing, which he claimed had changed after the United States Supreme Court's decision in the federal action. As to the third condition, plaintiff contended that the Supreme Court's decision had been an "extraordinary" development that had cut off access to the federal courts and thus prevented plaintiff from asserting his rights. Plaintiff further noted that any initial attempt to bring the federal case to state court within the limitations period would have been possibly prevented by the federal "Class Action Fairness Act's mandatory jurisdiction provision," which states that federal district courts retain original jurisdiction in class action cases with minimal diversity.[5] Finally, plaintiff maintained that he had been diligent in filing this case, as the finalized federal settlement had not

_____

[5]See 28 U.S.C § 1332(d)(2) (West 2020).

fully released the claims of the remaining class members determined not to have standing, such claims had been dismissed without prejudice, and he had filed the current action the same day of dismissal.

¶ 24     TransUnion's reply reiterated Illinois' rule against cross-jurisdictional tolling and *Portwood*'s applicability. TransUnion also denied that equitable tolling applied in lieu of this rule and argued that plaintiff had failed to cite any authority that allowed him to escape *Portwood*'s preclusive effect over his claims. Further, TransUnion continued, even assuming equitable tolling applied, plaintiff could not invoke it here. In multiple footnotes, TransUnion rejected plaintiff's characterization of being in the "wrong forum" and denied that the Class Action Fairness Act had precluded him from filing in state court during the pendency of the federal proceedings. In another footnote, TransUnion argued that plaintiff's assertion that he had filed in the wrong forum was disingenuous, given that plaintiff's class claims had been decertified based on a lack of standing, and not because of an improper forum choice.

¶ 25                                  2. Circuit Court Ruling

¶ 26     On June 29, 2023, the court heard argument on TransUnion's motion. On September 21, 2023, the court entered a written order granting TransUnion's 2-619(a)(9) motion to dismiss "on the grounds that [p]laintiff's claims [were] time-barred and tolling does not apply[.]" As such, the court dismissed the complaint with prejudice. This appeal followed.

¶ 27                                  II. ANALYSIS

¶ 28                                  A. Standard of Review

¶ 29     Section 2-619 of the Code of Civil Procedure permits dismissal of a complaint based upon certain defects or defenses. 735 ILCS 5/2-619 (West 2020). Its purpose is to "dispose of issues of law and easily proved issues of fact at the outset of the litigation." *Pruitt v. Pruitt*, 2013 IL App

(1st) 130032, ¶ 13. In reviewing a motion to dismiss pursuant to Section 2-619, all well-pleaded facts in the complaint must be accepted as true and all reasonable inferences that arise from those facts must be drawn in favor of the nonmoving party. *Leetaru v. Board of Trustees of University of Illinois*, 2015 IL 117485, ¶ 4.

¶ 30     A section 2-619 motion to dismiss admits the complaint's legal sufficiency but asserts affirmative matter that otherwise defeats the claim. *Pruitt*, 2013 IL App (1st) 130032, ¶ 13; *Leetaru*, 2015 IL 117485, ¶ 40. "The phrase 'affirmative matter' encompasses any defense other than a negation of the essential allegation of the plaintiff's cause of action." *Kedzie and 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993) (citing 4 R. Michael, Illinois Practice § 41.7 (1989)). The asserted "affirmative matter" must be apparent on the face of the complaint or supported by affidavits or other evidentiary material. *Pruitt*, 2013 IL App (1st) 130032, ¶ 14.

¶ 31     Paragraph (a)(9) of section 2-619, the provision upon which Trans Union relied for dismissal, permits involuntary dismissal where the "claim asserted against defendant is barred by other affirmative matter." See 735 ILCS 5/2-619(a)(9) (West 2020). Our supreme court has held that "affirmative matters" may include that the "action was not commenced within the time limited by law." *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 396 (2009); see also 735 ILCS 5/2-619(a)(5) (West 2020) (a defendant may file a motion for dismissal "if [t]he action was not commenced within the time limited by law.") We review a section 2-619 dismissal *de novo. Doe A.*, 234 Ill. 2d at 396. Accordingly, we may affirm dismissal on any basis appearing in the record, regardless of whether the circuit court relied on that same basis or if its reasoning was correct. *Malinksi v. Grayslake Community High School Dist. 127*, 2014 IL App (2d) 130685, ¶ 6.

¶ 32                                B. Arguments

¶ 33    On appeal, the parties' arguments essentially mirror those raised below. Plaintiff first argues that, although his Illinois action was filed beyond the statute of limitations, the case was still timely filed pursuant to Illinois' equitable tolling doctrine. Then, in an apparent preemptive attempt to defeat Trans Union's response, plaintiff asserts that both TransUnion and the circuit court incorrectly treated equitable tolling as "subsumed" within *Portwood*'s cross-jurisdictional tolling rule rather than two separate and independent doctrines. In response, TransUnion maintains that the bar against cross-jurisdictional tolling is dispositive, and that plaintiff is unable to cite any authority where equitable tolling could have applied over *Portwood* to avoid dismissal. Further, TransUnion continues, even assuming equitable tolling applied, plaintiff failed to satisfy the elements for its application.

¶ 34    A statute of limitations "governs the time within which lawsuits may be commenced after a cause of action has accrued." *DeLuna v. Burciaga*, 23 Ill. 2d 49, 61 (2006). Statutes of limitations are founded upon the premise that, at some point, "the right to be free of stale claims" prevails over "the right to prosecute them." *Portwood v. Ford Motor Co.*, 183 Ill. 2d 459, 463 (1998). Therefore, limitations periods "promote predictability and finality," in that they are "designed to encourage claimants to pursue causes of action before memories have faded, witnesses have died or disappeared, and evidence has been lost." *Id.*

¶ 35    Here, the federal statute at issue, the FCRA, expressly provides a statute of limitations within its legislative scheme. Specifically, section 1681p states that a claim must be brought within two years after the date of discovery, or five years after the date on which the violation occurs, whichever is earlier. 18 U.S.C. § 1681p. The prior federal action that included plaintiff's claims was filed in 2012, with claims asserted for a six-month time period in 2011. Thus, it is undisputed that absent any application of some tolling principle, plaintiff's claims, in our most generous

application of the limitations period, would have expired in July 2016, well before the filing of the Illinois case in 2023.

¶ 36    As plaintiff relies on the doctrine of equitable tolling, we begin our analysis there. The equitable tolling doctrine may be applied to suspend the running of a statute of limitations period in certain limited circumstances. *Block v. Pepper Construction Co.*, 304 Ill. App. 3d 809, 816-17 (1999). It thus operates as an exception to the general rule that a statute of limitations is not tolled. *Id*. "Equitable tolling, unlike equitable estoppel, applies even when [a party] is faultless." (Internal quotations and citations omitted.) *American Family Mutual Insurance Co. v. Plunkett*, 2014 IL App (1st) 131631, ¶ 32.

¶ 37    Although equitable tolling is recognized in Illinois, it has been said to be "rarely applied." *American Family Mutual Insurance Co.*, 2014 IL App (1st) 131631, ¶ 33; *Williams v. Board of Review*, 241 Ill. 2d 352, 360-61 (2011); *Ottaviano v. Home Depot, Inc., USA*, 701 F. Supp. 2d 1005, 1012 (N.D. Ill. 2010) ("[T]he scope of equitable tolling in Illinois can be difficult to elucidate"); *Shropshear v. Corp. Counsel of City of Chicago*, 275 F.3d 593, 596 (7th Cir. 2001) ("Indeed, we have expressed uncertainty that the doctrine of equitable tolling even exists in Illinois"). Further, because equitable tolling is fact-based, it "must be applied with caution" (*Ciers v. O.L. Schmidt Barge Lines, Inc.*, 285 Ill. App. 3d 1046, 1052 (1996)), and our case law seems to suggest that it may have only been actually applied once by our supreme court. See *City of Rockford v. Gilles*, 2022 IL App (2d) 210521, ¶ 65; *Williams*, 241 Ill. 2d 352.

¶ 38    Even so, case law instructs that equitable tolling under Illinois' doctrine may be appropriate under three circumstances: (1) where the defendant has actively misled the plaintiff, (2) if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or (3) if the plaintiff has mistakenly asserted his or her rights in the wrong forum. *Clay v. Kuhl*, 189 Ill. 2d

603, 614 (2000). Additionally, when assessing whether equitable tolling should be applied, courts also consider whether the applicable statute of limitations is "procedural" or "substantive" in nature based on the statute's purpose, legislative intent, and remedial enforcement mechanisms. See *Ciers*, 285 Ill. App. 3d at 1052; see also *Burnett v. New York Central R. Co.*, 380 U.S. 424, 426-27 (1965).

¶ 39 As the statute at issue here is a federal, not a state law, we deem it appropriate to consider whether Illinois' or the federal tolling doctrine applies. Interestingly, neither party acknowledges the existence of the federal doctrine, much less, the potential impact of the same. This is significant, as the federal doctrine appears to be assessed differently and is one which plaintiff likely could not have availed himself to save his complaint. Compare *Lombardo v. United States*, 860 F.3d 547, 551 (7th Cir. 2017) ("The threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule.") (Internal citations and quotations omitted.)); *Williams*, 241 Ill. 2d at 360-61 ("Generally, the doctrine of [federal] equitable tolling permits a court to excuse a plaintiff's failure to comply with a statute of limitations where 'because of disability, irremediable lack of information, or other circumstances beyond [the plaintiff's] control,' the plaintiff cannot reasonably be expected to file suit on time") (citing *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996)); *Ralda-Sanden v. Sanden*, 2013 IL App (1st) 121117, ¶ 20.[6]

---

[6]We acknowledge that some of our cases appear to have confused the distinction between the state and federal equitable tolling rules. Many courts have cited our supreme court's decision in *Williams v. Board of Review* as boilerplate for equitable tolling rules, but fail to acknowledge that *Williams* was applying a federal tolling doctrine to a federal statute. See, *e.g.*, *Tolbert v. Godinez*, 2020 IL App (4th) 180587, ¶ 24; but see *Ralda-Sanden*, 2013 IL App (1st) 121117, ¶ 50 (Connors, J., dissenting) ("Although *Williams* involved the equitable tolling doctrine, the court made clear that it was analyzing whether the *federal* equitable tolling doctrine could be applied to the *federal* Trade Act of 1974[.]") (Emphasis in original)); *City of Rockford*, 2022 IL App (2d) 210521, ¶ 65 (noting that our supreme court only applied the doctrine of equitable tolling once in *Williams*, where the issue before the court concerned a non-jurisdictional federal statute of limitations that, under federal law, was subject to a rebuttable presumption

¶ 40    "Federal law determines the tolling effect of a suit governed by a federal statute of limitations." *Sawyer v. Atlas Heating and Sheet Metal Works, Inc.*, 642 F.3d 560, 562 (2011); see also *Williams*, 241 Ill. 2d at 360 (noting that, in determining whether a federal statute is subject to equitable tolling, Illinois courts are bound by federal court decisions on that issue). Further, "[i]t is clear that federal courts recognize that there are important differences in the way that state and federal tolling doctrines are applied based largely on matters of legislative policy." *Ralda-Sanden*, 2013 IL App (1st) 121117, ¶ 50 (Connors, J., dissenting). In that regard, our own independent research reveals that courts have refused to apply equitable tolling doctrines, such as the discovery rule, to the FCRA's statute of limitations. See *TRW v. Andrews*, 534 U.S. 19, 27-33 (2001); *Rylewicz v. Beaton Services, Ltd.*, 888 F.2d 1175, 1181 (7th Cir. 1989); *Houghton v. Insurance Crime Prevention Institute,* 795 F.2d 322, 324-25 (3d Cir. 1986). Indeed, even after the FCRA was amended in 2003 to add the five-year period to assert a violation,[7] the import of those cases still appears viable. See *Rylewicz*, 888 F.2d 1175 at 1181. Thus, even if the parties had realized that federal tolling was dispositive, it is likely that the rule could not have been invoked regardless.

¶ 41    Beyond the parties' oversight regarding applicability of the federal tolling doctrine, plaintiff, who bears the burden on appeal, has failed to satisfy our supreme court rules in support of his contention that Illinois' equitable tolling doctrine applies over any other tolling doctrine. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (appellant's contentions must be supported by citation supporting authorities); *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 401 Ill. App. 3d 868, 881 (2010) (mere contentions without argument or citation of authority merit no consideration on

---

in favor of equitable tolling). Curiously, page 8 of plaintiff's own appellate brief cites *Williams* in support of his equitable tolling contention, while also acknowledging that the case involved *federal tolling* of a *federal statute.*

       [7]See 18 U.S.C. § 1681p (as amended in 2003 by Pub. L. No. 108-159).

appeal). It bears repeating that "[a] reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented," as the "appellate court is not a depository in which the appellant may dump the burden of argument and research." *23-25 Bldg. Partnership v. Testa Produce, Inc.*, 381 Ill. App. 3d 751, 755 (2008) (Internal quotations and citations omitted.)

¶ 42     Plaintiff does little more than exclaim his entitlement to equitable tolling. In the brief discussion following his tolling claim, he cites only the federal Class Action Fairness Act as presumably relevant to his argument that he was prevented from asserting his rights in an "extraordinary way." Then, citing a series of cases, which he deems analogous, he asserts that he mistakenly asserted his rights in the wrong forum. His argument, particularly with respect to the "extraordinary way" element, in which he cites to no cases, is, to say the least, fatally undeveloped and we therefore deem it to be forfeited. *International Union of Operating Engineers Local 965 v. Illinois Labor Relations Board, State Panel*, 2015 IL App (4th) 140352, ¶ 20 (a party forfeits review of an issue on appeal by failing to support its argument with citation to authorities). Similarly, his argument regarding the "wrong forum" element fares only slightly better but is no more availing.

¶ 43     Even assuming that Illinois' equitable tolling doctrine applied, plaintiff could not avail himself of its protections. In addressing the extraordinary circumstance inquiry, plaintiff offers two related contentions. He first contends that "[a]ny attempt to bring this case in this or other state courts would have been subject to the Class Action Fairness Act's 'mandatory jurisdiction provision,' " which, according to him, provides that districts courts "shall have original jurisdiction meeting the amount in controversy requirement and where there is minimal diversity." We

understand plaintiff's argument to mean that, language in the Act which vests federal courts with "original jurisdiction" in FCRA litigation, therefore precludes state court action. We disagree.

¶ 44    To the extent that plaintiff interprets the phrase "original jurisdiction" as synonymous with either "exclusive" or "mandatory jurisdiction," we would disagree. "Original jurisdiction" refers to a court's power to hear and decide a matter before any other court may review, in contrast to "appellate jurisdiction," which refers to a court of review's power to review and revise a lower court decision. See Black's Law Dictionary 930 (9th ed. 2009); Black's Law Dictionary 928 (9th ed. 2009). Our review of the Act's legislative history reveals that its purpose is to broaden the eligibility factors for federal diversity jurisdiction in class action suits, thus allowing federal courts to hear cases when at least one plaintiff is a citizen of a different state against that of at least one defendant. See, *e.g.*, 28 U.S.C. § 1332(d)(2)(B), (C) (West 2020); Pub. L. 109-2, § 4(a) (eff. Feb. 18, 2005) (amending 28 U.S.C. § 1332). As such, we find no requirement in the Act mandating filing in federal court, which "exclusive" or "mandatory" jurisdiction would require. Compare "exclusive jurisdiction," Black's Law Dictionary 929 (9th ed. 2009) ("A court's power to adjudicate an action or class of actions to the exclusion of all other courts"). That said, we agree with plaintiff that any attempt by him to file this same case in state court during its simultaneous pendency in the federal courts, as TransUnion suggests, would likely have been collaterally estopped. However, plaintiff points to no barrier preventing its filing in state court in the first instance.

¶ 45    Plaintiff additionally argues that the United States Supreme Court's decision in *Ramirez* cut off access to the federal courts "even upon a showing of a violation of a federal statute while leaving open access to state courts." Casting the decision as "new law," he maintains that the Court's decision prevented pursuit of his claims and was therefore an "extraordinary

development." In support, albeit in the facts section of his brief, plaintiff points to the dissenting justices' characterization of the majority opinion in *Ramirez* as novel.

¶ 46     The question then is whether the Supreme Court's decision in *Ramirez* was the type of circumstance that would qualify as "extraordinary." We believe the answer is "no." Illinois courts that have considered application of the tolling doctrine have defined "extraordinary barriers" to include legal disability, an irremediable lack of information, or circumstances where the plaintiff could not learn the identity of the proper defendant through the exercise of due diligence. *City of Rockford*, 2022 IL App (2d) 210521, ¶ 65 (citing *Doe v. Hastert*, 2019 IL App (2d) 180250, ¶ 48); see also *American Family Mutual Insurance Co.*, v. *Plunkett*, 2014 IL App (1st) 131631, ¶ 33**;** *Clay*, 189 Ill. 2d at 614 (no equitable tolling in sexual abuse case where plaintiff did not allege that she was misled or prevented from asserting her rights in a timely manner); (*Ralda-Sanden*, 2013 IL App (1st) 121117, ¶¶ 18-26 (finding extraordinary circumstances in case of first impression where, under Illinois Parentage Act, uncontroverted affidavit of plaintiff in paternity proceeding established that the defendant had threatened plaintiff's mother to withheld identity of parentage which resulted in plaintiff failing to learn of defendant's existence until well past 2-year statute of limitations period); *Peregrine Financial Group, Inc. v. Futronix Trading, Ltd.*, 401 Ill. App. 3d 659, 662 (2010) (upholding dismissal of time-barred confirmation of arbitration award petition, even where plaintiff argued that it had been unaware of defendant's physical relocation without leaving a forwarding address).

¶ 47     Although there is a paucity of Illinois caselaw exemplary of extraordinary circumstances for purposes of equitable tolling, federal caselaw is not lacking in that regard. See *Dent v. Charles Schwab & Co. Inc.*, 121 F.4th 1352, 1353-54 (7th Cir. 2024) (noting that equitable tolling is "an extraordinary remedy" and that failure to meet a filing deadline was "garden variety neglect" that

did not amount to extraordinary circumstances); *Lombardo*, 860 F.3d at 551-55 (rejecting plaintiff's contention that his attorney's miscalculation of statute of limitations qualified as an extraordinary circumstance); *Modrowski v. Mote*, 322 F.3d 965, 967-68 (7th Cir. 2003) (collecting cases in federal habeas petition context and noting that courts had "yet to identify a circumstance that justifie[d] equitable tolling" even when litigant showed lack of access to trial transcripts, language barrier, prison transfers, death of family member, or attorney negligence); compare *Socha v. Boughton*, 763 F.3d 674, 684-87 (7th Cir. 2014) (finding extraordinary circumstances when imprisoned *pro se* petitioner, under a one-year statute of limitations period, demonstrated "insurmountable" "hurdles," including lack of access to court file from previous attorney despite repeated attempts to retrieve it, inability to monitor case due to segregated status in prison and limited access to law library, and being unrepresented during the entirety of limitations period). Clearly, the circumstances in this case's proceedings mirror the events cited above which were deemed to be *unextraordinary*, either in our state or federal jurisprudence. To find otherwise would require our expansion of the concept of "extraordinary" for purposes of equitable tolling. That we are not inclined to do.

¶ 48   Furthermore, the *Ramirez* majority, in responding to the minority justices' dissent, took the position that for purposes of standing, Article III has *always* required the plaintiff to have suffered a concrete harm, citing as precedent for its interpretation, *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), and *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). See *TransUnion, LLC,* 594 U.S. at 424-30. Thus, the majority in *Ramirez* would not agree that the decision qualified as "new law," but rather, an application of settled principles on standing under Article III of the Constitution. It is the role of the courts to construe constitutions and statutes. That a court's construction might yield a result unfavorable to

a party is an anticipated, though not desirable, possible outcome of any litigation. Although the outcome, as in this case, is unfavorable to a plaintiff, we do not view the outcome as having prevented assertion of plaintiff's rights in an "extraordinary way." Finally, but significantly, there is nothing "extraordinary" about a case being dismissed based on lack of standing, as this is a standard consideration required for any case, class action or otherwise. See, *e.g.*, *Hess v. I.R.E. Real Estate Income Fund, Ltd.*, 255 Ill. App. 3d 790, 801 (1993) (propriety of class action complaint based on whether named representative had sufficient standing to represent entire class). In sum, we find no "extraordinary" circumstance which prevented plaintiff's pursuit of his claims in state court.

¶ 49    In his continuing effort to save his claims, plaintiff contends that he mistakenly asserted his claim in the "wrong forum," *i.e.*, federal court, based upon his "reasonable understanding" of prior federal law. He argues that in light of the Supreme Court's decision in *Ramirez*, which "effected a change in the law," his reliance on jurisdiction in the Northern District of California was unquestionably a reasonable mistake. He cites a number of cases, presumably analogous to the case at bar, but which we find inapposite. See *Granger v. Rauch*, 388 F. App'x 537, 542-43 (7th Cir. 2010) (unpublished and non-precedential application of Illinois' equitable tolling rule appropriate where *pro se* litigant was improperly instructed by federal judge that he had filed in the wrong venue and then subsequently refiled claims dismissed as untimely); *Walck v. Discavage*, 741 F. Supp. 88, 91 (E.D. Pa. 1990) (applying federal tolling doctrine in maritime tort case based on assertion of rights in wrong forum where it had been unclear whether jurisdiction was proper in Maryland or Delaware based on location of boating accident); *Clay*, 189 Ill. 2d at 614 (no equitable tolling of statute in sexual abuse case where plaintiff did not allege that abuser either misled or prevented her from filing claims); *Williams*, 241 Ill. 2d at 370-73 (applying federal

tolling doctrine to federal statute of limitations where party suffered from lack of notice regarding deadline to apply for benefits). Further, as we pointed out above, the *Ramirez* majority took the position that "concrete harm" has always been required for standing. Thus, plaintiff's argument regarding the wrong forum necessarily fails.

¶ 50    Finally, we acknowledge plaintiff's additional argument with respect to his diligence in filing in state court, a factor generally required under the federal equitable tolling doctrine. See *Holland v. Florida*, 560 U.S. 631, 653 (2010); *Dent*, 121 F.4th at 1353 ("Equitable tolling must be predicated on a showing that the litigant seeking such relief has been pursuing his rights diligently" *and* that an extraordinary circumstance prevented timely filing). However, given the nature of Illinois' equitable tolling doctrine, we do not find diligence alone to be an adequate basis to justify its application.

¶ 51    We note in passing that, throughout the duration of litigation, TransUnion was adamant that *Portwood*'s bar on cross-jurisdictional tolling barred plaintiff's claims here. Although we acknowledge that *Portwood* appears to be Illinois' seminal case concerning "cross-jurisdictional tolling" and that some procedural aspects are similar, we read *Portwood* differently. There, the relevant claims and statutes of limitations were *state-based* in nature, thus underscoring our supreme court's concern with increased burdens on the state court system and possible exposure to forum shopping. *Portwood*, 183 Ill. 2d at 464-67. In contrast here, as stated prior, plaintiff's dismissed federal claims were brought pursuant to a federal statute with a corresponding statute of limitations. Thus, although the forums are the same, we do not precisely have the same limitations concerns before us now as they were addressed in *Portwood*.

¶ 52    Nevertheless, plaintiff was steadfast in his contention that Illinois' equitable tolling doctrine was sufficient to save him from an otherwise untimely filing, and thus it was his burden

on appeal to establish that the doctrine applied to his Illinois action. He did not do so here. Accordingly, we find no error in the circuit court's granting of TransUnion's section 2-619 motion and thus affirm the court's dismissal of plaintiff's complaint.

¶ 53                                    III. CONCLUSION

¶ 54    For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

¶ 55    Affirmed.

*Arrizon v. TransUnion, LLC*, 2025 IL App (1st) 231911

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23 CH 00644; the Hon. Cecilia A. Horan, Judge, presiding. |
| **Attorneys for Appellant:** | Jordan M. Sartell, of Francis Mailman Soumilas, P.C., of Wheaton, for appellant. |
| **Attorneys for Appellee:** | Mark L. Hanover, Kristine M. Schanbacher, and Emily C. Eggman, of Dentons US LLP, of Chicago, for appellee. |